CLOVERLEAF EXPRESS, Employer
and Commerce and Industry Insurance Company,
AIG Claims Services, Inc. *v.* Lyle FOUTS

CA 04-921                                                 207 S.W.3d 576

Court of Appeals of Arkansas
Opinion delivered April 27, 2005

6

*Matthews & Drake PLC*, by: *John P. Talbot* and *R. Scott Morgan*, for appellants.

*Martin & Kieklak Law Firm*, by: *Aaron L. Martin* and *Kenneth J. Kieklak*, for appellee.

R OBERT J. GLADWIN, Judge. Appellee Lyle Fouts suffered a cardiac episode on December 15, 2000, while employed by appellant Cloverleaf Express. In an opinion entered on February 20, 2002, the administrative law judge (A.L.J.) found that appellee failed to prove that he was an employee at the time of his injury. The Commission reversed the A.L.J.'s opinion and remanded the matter for resolution of other issues. In an unpublished opinion handed down on May 14, 2003, this court dismissed appellant's appeal from the Commission's order on the basis that it was not a final, appealable order. On August 29, 2003, the A.L.J. filed an opinion, pursuant to the Commission's remand, resolving the remaining issues. The A.L.J. found that appellee was an employee and not an independent contractor; that he earned wages sufficient to entitle him to weekly compensation benefits of $394 for total disability and $296 for permanent partial disability; that he had sustained a compensable cardiovascular and cerebrovascular injury; that the medical services provided to him were reasonably necessary; that he had been rendered temporarily totally disabled from December 16, 2000, continuing until a date yet to be determined; that appellant had controverted appellee's claim; and that appellee's attorney would receive the maximum statutory attorney's fee. The Commission affirmed and adopted the A.L.J.'s opinion. Appellants argue that: (1) the facts found by the Commission do not support its determination that appellee was an employee of Cloverleaf; (2) the Commission's finding that appellee was an employee is not supported by substantial evidence; (3) the Commission's determination that an accident was the major cause of appellee's cardiac injury is not supported by substantial evidence. We affirm.

Cloverleaf's business involves transporting goods by tractor-trailer truck, and its primary customer is Wal-Mart Stores, Inc. Appellee worked as a truck driver for Cloverleaf and drove one of its two company-owned trucks. On December 15, 2000, appellee

was leaving a Wal-Mart facility in Corinth, Mississippi, when a conveyor line fell from the customer's dock as appellee was pulling his truck away from it. Apparently, the conveyor line had not yet been removed from his truck. Wal-Mart personnel requested that appellee help get the conveyor line back in place. Several people were lifting the line, which weighed approximately 800 pounds, when appellee fell onto the ground. He was hospitalized, and Dr. Michael D. Green diagnosed an episode of "sudden cardiac death."

A central issue of this case was whether appellee was indeed an employee of Cloverleaf given that he had applied for and was issued a certificate of non-coverage by the Commission. Arkansas Code Annotated section 11-9-402(c)(1)(B)(i) (Repl. 2002) provides:

> A sole proprietor or the partners of a partnership who do not elect to be covered by this chapter and be deemed employees thereunder and who deliver to the prime contractor a current certification of noncoverage issued by the Workers' Compensation Commission shall be conclusively presumed not to be covered by the law or to be employees of the prime contractor during the term of his or her certification or any renewals thereof.

In addition, Ark. Code Ann. § 11-9-102(9)(D) (Repl. 2002) provides:

> Any *individual* receiving a certification of noncoverage under this chapter from the Commission shall thereafter, or until he elects otherwise, be conclusively presumed not to be an employee for purposes of this chapter or otherwise.

(Emphasis added.)

The Commission found that, when Ark. Code Ann. § 11-9-102 was read in conjunction with Ark. Code Ann. § 11-9-402, the use of the more general term "individual" in Ark. Code Ann. § 11-9-102 referred only to a sole proprietor or a partner in a partnership as in Ark. Code Ann. § 11-9-402.

Appellants argue that the language in Ark. Code Ann. § 11-9-102(9)(D) makes it clear that appellee, as an "individual," is conclusively presumed not to be an employee for purposes of

Workers' Compensation. Appellants essentially argue that the Commission misinterpreted the statute and the legislature's intent.[1]

■ Workers' Compensation Law must be strictly and literally construed by the Commission and the courts, and a particular provision in a statute must be construed with reference to the statute as a whole. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ozark Gas Pipeline Corp. v. Ark. Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* We will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Burford Distrib., Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000).

■ The Commission relied on one of its own opinions[2] in which it had already considered the legislature's intent regarding the above statutes. In that earlier opinion, the Commission concluded that a certificate of non-coverage cannot act as a waiver for individuals who are employees and that certificates of non-coverage apply only to sole proprietors or partners who are conducting independent businesses. In reaching its conclusion, the Commission noted that another statute was at issue. Arkansas Code Annotated section 11-9-108(a) (Repl. 2002) provides:

> No agreement by an employee to waive his or her right to compensation shall be valid, and no contract, regulation, or device whatsoever shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this chapter, except as specifically provided elsewhere in this chapter.

The Commission quoted extensively from its earlier opinion:

---

[1] Appellants also raise an estoppel issue, arguing that workers should not be allowed to assert that they are employees after the employer or prime contractor has relied upon an application for a certificate of non-coverage; however, that argument is not preserved for review because it was not presented to the Commission. *See Teague v. C & J Chem. Co.*, 55 Ark. App. 335, 935 S.W. 2d 605 (1996).

[2] *Patrick Golden v. Randy Wiggins Logging*, Full Workers' Compensation Commission opinion filed on July 13, 1998 (W.C.C. E602244).

The obvious intent of Ark. Code Ann. § 11-9-108[a] is to prevent employees, as a result of coercion or persuasion, or because of a lack of information, from executing a waiver or other document that relieves their employer of the obligation to provide workers' compensation coverage. On the other hand, Ark. Code Ann. § 11-9-402(c)(1)(B)(i) is designed to allow subcontractors, who are functioning as an independent business, and who are not required to have workers' compensation insurance because they have no employees, to avoid having a general contractor or prime contractor require them to purchase workers' compensation insurance by withholding the cost of the premium from what they were paid.

Significantly, the Certificate of Non-Coverage statute indicates that, when sole proprietors or partners of a partnership obtain such a certificate, they are conclusively presumed not to be covered by the law or to be employees of the prime contractor. The respondent is relying upon that section to act as a bar to the present claim. They contend that the fact that the claimant obtained a Certificate of Non-Coverage constitutes a conclusive finding that he is, in fact, an independent contractor and is not the employee of the respondent herein. However, if the statute is interpreted in the manner suggested by the respondent, and the person attempting to obtain the Certificate of Non-Coverage is an employee, then a direct conflict is created with Ark. Code Ann. § 11-9-108(A). After all, if an employee could obtain a Certificate of Non-Coverage by filling out an application and sending it to the Workers' Compensation Commission, and if the issuance of such a certificate would then relieve their employer of workers' compensation coverage, then the application would effectively function as a waiver.

In our opinion, this is clearly not the result intended by the legislature when the Commission was authorized to issue Certificates of Non-Coverage. The certificates were intended to be issued only to sole proprietors or partners who were conducting independent businesses. We do not believe that it was intended to act as a "waiver" for individuals who are employees. If the latter were the case, then employers could avoid the Workers' Compensation Act simply by declaring that their employees were independent contractors and terminating any who would not obtain a Certificate of Non-Coverage. Obviously, such a situation is contrary to the purposes and objectives of the Workers' Compensation Act.

We also note that the legislature has directed the Commission and the Courts to strictly interpret the Workers' Compensation Act. Since the statute in question only permits <u>sole proprietors or partners</u> in a partnership to obtain a Certificate of Non-Coverage, we believe that it would be a significant expansion of the Workers' Compensation Act to interpret it in such a manner that <u>employees</u> were able to obtain Certificates of Non-Coverage so as to act as a waiver. Such a holding would constitute a significant expansion of the Workers' Compensation Act, something that is expressly prohibited by the Act. See Ark. Code Ann. § 11-9-1001.

For the reasons set out above, we hold that Certificates of Non-Coverage are only effective for <u>sole proprietors or partners</u> in a partnership at the time the certificate is applied for. Such a result would act to permit those for whom the statute is intended to benefit, to obtain certificates unimpeded, and would prevent the use of certificates as waivers to avoid an employer's statutory obligation to provide workers' compensation coverage to his employees. [Emphasis in original.]

In the case at bar, the Commission concluded that, absent any direct guidance from the courts and consistent with its earlier unanimous decision, the filing of an application for and issuance of a certificate of non-coverage does not automatically bar a claimant from receiving benefits against his employer.

The Workers' Compensation Commission is an administrative agency, and as a general rule, administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than are courts to determine and analyze legal issues affecting their agencies; therefore, while not conclusive, the interpretation of a statute by an administrative agency is highly persuasive. *Lawhorn Farm Servs. v. Brown*, 60 Ark. App. 64, 958 S.W.2d 538 (1997). An administrative agency's interpretation of a statute or its own rules will not be overturned unless it is clearly wrong. *Id.* When the statutes are considered as a combined whole, we cannot say in the present case that the Commission was clearly wrong in its interpretation. We agree that interpreting Ark. Code Ann. § 11-9-102(9)(D) in the manner suggested by appellants would create a conflict with Ark. Code Ann. § 11-9-108(a) and would be contrary to the purposes and objectives of the Workers' Compensation Act.

Next, appellants argue that even if Ark. Code Ann. § 11-9-102(9)(D) does not bar appellee's claim, appellee was an independent contractor and not an employee. An independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 16 S.W.3d 545 (2000). The issue of whether one is an employee or an independent contractor is analyzed under two separate tests: (1) the control test; and (2) the relative nature of the work test. On the issue of control, this court has stated:

> The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists.

*Massey v. Poteau Trucking Co.*, 221 Ark. 589, 592, 254 S.W.2d 959, 961 (1953). The ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control. *Wright v. Tyson Foods, Inc.*, 28 Ark. App. 261, 773 S.W.2d 110 (1989). There is no fixed formula for determining whether a person is an employee or an independent contractor; thus, the determination must be based on the particular facts of each case. *Ark. Transit Homes, supra*. Although no one factor of the relationship is determinative, *see Wright, supra*, the "right of control" is the principal factor in determining whether the relationship is one of agency or independent contractor. *See Aloha, supra*.

The following factors are to be considered in determining whether one is an employee or independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Aloha, supra.* The factors pertaining to the nature of the worker's occupation and whether it is a part of the regular business of the employer comprise the "relative nature of the work" test. *Ark. Transit Homes, supra.* In *Sandy v. Salter,* 260 Ark. 486, 541 S.W.2d 929 (1976), our supreme court adopted Professor Larson's test for examining the relationship between the worker's occupation and the regular business of the employer. This test requires consideration of two factors: (1) whether and how much the worker's occupation is a separate calling or profession; and (2) what relationship it bears to the regular business of the employer. *Id.* The more the worker's occupation resembles the business of the employer, the more likely the worker is an employee. *Id.*

Appellants maintain that Wal-Mart gave appellee a trailer and a destination and that Cloverleaf's only instruction was "to keep Wal-Mart happy." Appellants argue that it would have incurred contractual liability if it had terminated appellee during one of his hauls because he would be entitled to recover his 27% of the revenue from the haul. Appellants point out that appellee was paid by the job and did not receive an hourly wage. While appellee was free to take passengers with him on hauls, Cloverleaf had no control over those passengers, who may even have chosen to help appellee with his haul. Appellants concede that Cloverleaf furnished the necessary equipment for the job, which weighs in favor of appellee's being considered an employee, but point out that no single factor is determinative. Appellants argue that appellee was

engaged in the distinct occupation of truck driver and that transportation of goods by tractor-trailer requires somewhat specialized skills. Appellants argue that appellee's work may be said to be an integral part of Cloverleaf's business but that anytime a business hires someone to perform a task, that task may be said to be in furtherance of the business's enterprise. Appellants argue that appellee's employment was job-to-job with no guarantee of more loads. Appellants also point out that Cloverleaf did not withhold taxes from appellee's pay, which is a circumstance to consider. Finally, appellants argue that appellee understood the certificate of non-coverage and that his signing of the application was evidence that he considered himself an independent contractor.

The Commission found that Cloverleaf exercised control over appellee's work and that appellee's job of driving a truck was an integral part of Cloverleaf's business and not a distinct occupation. Appellee drove one of the two trucks directly owned by Cloverleaf. While Cloverleaf did not pay workers' compensation insurance premiums on appellee, it paid premiums on the person who drove the other company-owned truck. Cloverleaf paid for maintenance, repairs, and fuel for the truck driven by appellee. Cloverleaf instructed appellee as to when he needed to pick up a load from Wal-Mart. Cloverleaf's co-owner Mary Ann Pearson testified that appellee could not hold down any other jobs because the company expected him to be ready to go whenever he was called. Cloverleaf paid appellee 27% of the gross receipts from each haul. The Commission noted that it appeared as though appellee was engaged in at-will employment with Cloverleaf and that either party could terminate the arrangement with no financial consequences. The Commission concluded that the factors indicated that an employee/employer relationship existed and that appellee was not an independent contractor.

In reviewing decisions from the Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Carman v. Haworth, Inc.*, 74 Ark. App. 55, 45 S.W.3d 408 (2001). Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Id.*

We simply cannot say on these facts that there is no substantial evidence to support the Commission's conclusion that appellee was an employee. A reading of the cases involving the issue of employee versus independent contractor indicates that such cases are frequently very close. *See, e.g., Franklin v. Ark. Kraft, Inc.,* 5 Ark. App. 264, 635 S.W.2d 286 (1982). In many of those cases, a decision either way would have been supported by substantial evidence, and therefore, the appellate court would have been required to affirm, regardless of the result reached by the Commission. *Id.* When the facts of this case are viewed in the light most favorable to the Commission's findings, it is clear to us that fair-minded persons could have reached the same conclusion as the Commission. Accordingly, we affirm on this point.

Finally, appellants contend that, because appellee had such major blockages less than one month after the incident and because he had a history of heart problems, the major cause of his injury could not have been the simple act of lifting a conveyer ramp. In addition, appellants maintain that Dr. Green impermissibly considered appellee's physical stress in determining major cause.

Arkansas Code Annotated section 11-9-114 (Repl. 2002) provides:

> (a) A cardiovascular, coronary, or myocardial infarction causing injury, illness, or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

> (b)(1) An injury or disease included in subsection (a) of this section shall not be deemed to be a compensable injury unless it is shown that the exertion of the work necessary to precipitate the disability or death was extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment or, alternatively, that some unusual and unpredicted incident occurred which is found to have been the major cause of the physical harm.

> (2) Stress, physical or mental, shall not be considered in determining whether the employee or claimant has met his burden of proof.

Questions of weight and credibility are within the sole province of the Workers' Compensation Commission, which is not required to believe the testimony of the claimant or of any

other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *See Jim Walter Homes v. Beard*, 82 Ark. App. 607, 120 S.W.3d 160 (2003). Furthermore, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Estridge v. Waste Mgmt.*, 343 Ark. 276, 33 S.W.3d 167 (2000). Medical opinions addressing compensability must be stated within a reasonable degree of medical certainty. *See* Ark. Code Ann. § 11-9-102(16)(B) (Repl. 2002); *Smith-Blair, Inc. v. Jones*, 77 Ark. App. 273, 72 S.W.3d 560 (2002). Speculation and conjecture cannot substitute for credible evidence. *Id.*

In addressing the "major cause" aspect, the Commission found that appellee's initial physical harm was the myocardial infarction, which resulted in ventricular fibrillation causing cardiac arrest, and that those conditions stopped the flow of oxygenated blood to appellee's brain, which caused cerebral hypoxia and physical harm to his brain. As the Commission pointed out, appellee had a history of cardiac problems. In October 1991, he underwent quadruple bypass surgery, after which he continued to experience frequent episodes of angina, requiring nitroglycerin. Appellee also had hypertension and high cholesterol. A cardiac catheter study was performed on January 8, 2001, and it showed that appellee had a 100% occlusion of his right main coronary artery, a 75% occlusion of his left main coronary artery, a 90% occlusion of the first obtuse marginal artery, and a 100% occlusion of the second obtuse marginal artery. Even though appellee's blockages occurred over a period of time, this would not preclude a finding that his work conditions were the major cause of his heart injury. *See Williford v. City of North Little Rock*, 62 Ark. App. 198, 969 S.W.2d 687 (1998).

Here, the Commission relied on the only expert medical opinion concerning the causal relationship between appellee's lifting of the conveyor line and the myocardial infarction he suffered on the same date. In a letter dated August 7, 2001, Dr. Green stated:

> In conclusion, I would say that considering his risk factors and known coronary artery disease that while the patient was completing his job at the time, i.e., lifting a conveyor belt, this put an enormous strain on his heart at the same time that it was not getting

adequate blood flow. If one was to look at this from a percentage standpoint, I would state that it was easily greater than a 50% major cause for his injury.

The Commission found that Dr. Green was a "highly competent cardiologist," who was both credible and convincing. Dr. Green's medical opinion was stated within a reasonable degree of medical certainty because it was sufficiently clear to remove any reason for the trier of fact to have to guess at the cause of the injury. *See Howell v. Schroll Techs.*, 343 Ark. 297, 35 S.W.3d 800 (2001). We thus agree with the Commission's conclusion that the exertion or effort expended in appellee's participation in lifting the conveyor line, which was extraordinary and unusual, was the major cause of his initial myocardial infarction on December 15, 2000, and was a compensable injury within the meaning of Ark. Code Ann. § 11-9-114. Furthermore, we disagree with appellants' assertion that Dr. Green relied on physical stress in rendering his opinion. Our understanding of Dr. Green's opinion is that the exertion in lifting the conveyor line, which put "an enormous strain" on appellee's heart, was the major cause of the injury. In other words, the accident, and not physical stress, resulted in injury to appellee's heart.

Affirmed.

GRIFFEN and BAKER, JJ., agree.