2009 Ark. App. 719

**Kaedon STEINERT, d/b/a Hurricane Express, Inc., et al., Appellants,**

v.

**ARKANSAS WORKERS' COMPENSATION COMMISSION, Appellee.**

**No. CA 09–149.**

Court of Appeals of Arkansas.

Nov. 4, 2009.

Rehearing Denied Dec. 16, 2009.

Kenneth S. Hixson, Fayetteville, Appellants.

Stephen C. Engstrom, Little Rock, Appellee.

LARRY D. VAUGHT, Chief Judge.

Kaedon Steinert and his multiple trucking enterprises are appellants in this case. The Arkansas Workers' Compensation Commission instituted an investigation of two of Steinert's motor-carrier companies after the Commission received an anonymous phone call that the motor carriers were not providing workers' compensation insurance for their truck drivers. As a result, Steinert's two motor carriers were charged with violating Arkansas Workers' Compensation Law and issued a $10,000 fine. Appellants requested a hearing before an Administrative Law Judge, who found that appellants' truck drivers were employees, directed the two motor carriers to provide these employees workers' com-

pensation coverage, and fined the carriers $10,000. The ALJ also found that the single workers' compensation policy purchased by Steinert to cover employees who worked for him individually and for his other businesses was insufficient under the dual-employment doctrine. The Commission affirmed and adopted ₂the ALJ's decision. On appeal, appellants contend that the Commission erred in finding that their truck drivers were employees and that the single workers' compensation policy was insufficient to provide coverage to Steinert's individual employees. We affirm the Commission's finding that the truck drivers are employees; however, we reverse the Commission's finding that the single workers' compensation policy secured by Steinert was insufficient.

Appellant Hurricane Express, Inc. (Hurricane Express), is a motor carrier that operates thirty-five to forty trucks and is authorized and licensed by the United States Department of Transportation (DOT) and the Federal Motor Carrier Safety Administration (FMCSA). Steinert is the owner of 100% of Hurricane Express's stock and serves as its president. Appellant Naedok, LLC (Naedok), is also a motor carrier. It operates approximately six to ten trucks and is duly authorized and licensed by the DOT and FMCSA. Steinert is owner of 100% of the shares of Naedok and serves as its president.

Steinert testified that Hurricane Express and Naedok do not own any trucks; rather, they lease trucks from drivers via a lease-operator contract. This contract specifically states that the drivers are not employees but independent contractors. Hurricane Express and Naedok issue their drivers nonemployee-compensation tax forms at the end of the year and do not deduct payroll taxes for them. Each driver is required by Hurricane Express and Naedok to apply for and receive a certifi-

cate of noncoverage from the Commission. Steinert testified that Hurricane Express and Naedok keep maintenance files, maintenance logs, daily logs, alcohol and controlled-substance testing documents, and accident registers as per DOT requirements. These motor carriers are also required by the DOT to provide liability insurance for their drivers. ₃Steinert stated that Hurricane Express and Naedok do not control where their drivers make fuel purchases, where or how they repair their trucks, or which route they must take. Hurricane Express and Naedok do not employ mechanics; however, Steinert individually employs two mechanics who work at the Hurricane Express facility.

Appellant Hurricane Express Logistics, Inc. (Hurricane Logistics), is a brokerage corporation, licensed by the DOT. Steinert owns 100% of the stock of Hurricane Logistics. According to Steinert, Hurricane Logistics finds drivers to haul loads for customers. He testified that truck drivers have the right to refuse a load offered by Hurricane Logistics and that loads have been refused. If the driver accepts the load, Hurricane Logistics merely provides the driver pertinent load information. The driver reports directly to the customer regarding the status of the load. Once the driver arrives at the destination with the load, he calls Hurricane Logistics for another assignment.

Appellant Kaedon Steinert, Inc., (KSI) is a leasing company, and all of its stock is owned by Steinert. KSI owns approximately forty to forty-five tractors that are leased to truck drivers pursuant to a rental agreement. The rental agreement requires drivers to operate the tractor under KSI's direction and under the authority of Hurricane Express. KSI also owns trailers that it leases to Hurricane Express.

Steinert testified that he employs about eight to ten people for office and mechanic work. These employees, according to Steinert, work for him individually and all of his other companies.[1] Steinert said that he purchased one workers' compensation policy and that these employees are covered under the policy regardless of which one of his companies they may be working for. The Commission's investigator testified that Steinert's insurance agent reported that the workers' compensation policy purchased by Steinert covered his office employees and mechanics while working at any of his businesses.

Duane Meadows and William Smedley testified that they were truck drivers who signed a rental agreement with KSI and a lease-operator contract with Hurricane Express. They both testified that they were responsible for the maintenance of their trucks and paid for their fuel, oil, and tires as needed. They said that they were not obligated to accept a load from Hurricane Logistics and had refused loads. When they accepted a load, the customer would tell them where to pick it up and where to drop it off. However, they were required to keep in contact with Hurricane Express to provide information required by DOT regulations. They both said they have only hauled loads brokered by Hurricane Logistics while working for Hurricane Express.

Although the tractors driven by Meadows and Smedley had the "Hurricane Express" logo on them, Meadows testified that he did not wear a uniform and was not identified as a representative of Hurricane Express. Both men testified that they could take time off without ramifica-

tion and Hurricane Express did not control how they got from place to place. They both received 1099s from Hurricane Express and received a certificate of noncoverage from the Commission. They also testified that they had worked as employees for other trucking companies in the past and did not like it because those companies exercised too much control over them. As such, it was their intent to be hired by Hurricane Express as independent contractors, not employees.

The final witness to testify was Glen Honeycutt, the chairman of the board of Transafe, Inc., which is a company that provides safety consulting to the trucking industry. He testified that the DOT's regulations imposed on motor carriers in the trucking industry are mandatory and cannot be transferred to truck drivers. He also testified that DOT regulations require that a motor carrier be in exclusive possession and control of a leased tractor for insurance purposes. Honeycutt reviewed the lease-operator contracts used by Hurricane Express, and he opined that the agreements did not give it the right to control the trips accepted by its drivers.

The ALJ, in an amended order and opinion, found that the individuals driving trucks for Hurricane Express and Naedok were employees, and Hurricane Express and Naedok were directed to provide workers' compensation coverage for them and pay a $10,000 fine. The ALJ also found that the workers' compensation policy purchased by Steinert to cover the office employees and mechanics who worked for him was insufficient coverage pursuant to the dual-employment doctrine. The

---

1. In addition to Hurricane Express, Naedok, Hurricane Logistics, and KSI, there are three other companies owned by Steinert: (1) appellant Hurricane Express Leasing, Inc., a dormant Arkansas corporation; (2) appellant Jonathan, Ltd., a dormant leasing company,

with no employees, which has recently obtained its DOT certification and authority to transport diesel fuel; and (3) appellant Performance Watercraft and Cycle, Ltd., an inactive repair shop.

Commission affirmed and adopted the ALJ's decision.

■ The first issue appellants raise on appeal is that the Commission erred in finding that appellants' truck drivers are employees because they were issued certificates of noncoverage. Appellants argue that truck drivers for Hurricane Express and Naedok are not employees pursuant to Arkansas Code Annotated section 11–9–102(9)(C) (Supp.2009), which provides that "[a]ny individual holding from the commission a current certification of noncoverage under this chapter shall be conclusively presumed not to be an employee for purposes of this chapter or otherwise." Appellants contend that, based on the plain and unambiguous language of the statute, because their truck drivers had all applied for and received certificates of noncoverage, they should be "conclusively presumed" not to be employees of Hurricane Express and Naedok.

■ Our court rejected this precise argument in *Cloverleaf Express v. Fouts*, 91 Ark.App. 4, 207 S.W.3d 576 (2005). There, Cloverleaf Express argued that Fouts was not an employee because he received a certificate of noncoverage. Our court disagreed, stating that interpreting section 11–9–102(9)(C) in the manner suggested by Cloverleaf Express created a conflict with section 11–9–108(a) (Supp.2009)[2] because the application and issuance of such a certificate would relieve the employer of workers' compensation coverage and would effectively function as a waiver. *Cloverleaf Express*, 91 Ark.App. at 14, 207 S.W.3d at 581–82. We further held that certificates of noncoverage apply only to sole proprietors or partners who are con-

ducting independent businesses. *Id.* at 14–15, 207 S.W.3d at 581–82. For the same reasons expressed in *Cloverleaf Express*, we reject appellants' first point on appeal.

■ The second issue raised by appellants is whether substantial evidence supports the Commission's finding that their truck drivers are employees. In reviewing decisions from the Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Id.* at 18, 207 S.W.3d at 584. Substantial evidence exists if reasonable minds could reach the same conclusion. *Id.*, 207 S.W.3d at 584. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Id.*, 207 S.W.3d at 584.

■ An independent contractor is one who contracts to do a job according to his own method and without being subject to the control of the other party, except as to the result of the work. *Cloverleaf Express*, 91 Ark.App. at 16, 207 S.W.3d at 582. The ultimate question is not whether the employer actually exercises control over the doing of the work, but whether he has the right to control. *Id.*, 207 S.W.3d at 583. There is no fixed formula for determining whether a person is an employee or an independent contractor; thus, the determination must be based on the particular facts of each case. *Id.*, 207 S.W.3d at 583.

---

2. Arkansas Code Annotated section 11–9–108(a) provides:

No agreement by an employee to waive his or her right to compensation shall be valid, and no contract, regulation, or device what-

soever shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this chapter, except as specifically provided elsewhere in this chapter.

■ The following factors are to be considered in determining whether one is an employee or independent contractor:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

|₅(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* at 16–17, 207 S.W.3d at 583. Although no one factor is determinative, the "right of control" is the principal factor in determining whether the relationship is one of agency or independent contractor. *Id.* at 16, 207 S.W.3d at 583.

■ Based on the facts in this case, we cannot say that there is a lack of substantial evidence supporting the Commission's conclusion that appellants' truck drivers were employees. The Commission considered the relevant factors listed above and found that, despite the labels given by the parties, the truck drivers were employees subject to the control of Hurricane Express and Naedok. The Commission found that driving a truck was an integral part of the business of Hurricane Express/Naedok and that the drivers hauled loads exclusively for these motor carriers. The Commission cited evidence that the trucks the drivers used—owned by KSI— had the Hurricane Express logo on them. The Commission noted the rental agreement between KSI and the truck drivers that provided that the drivers were required to operate the truck under KSI's direction and under the operating authority of Hurricane Express. The agreement further |₉provided that no person other than the driver may use the truck without the express written consent of KSI, that the driver may not assign the agreement or sublease the truck, and that the driver of the truck must be approved by KSI. The driver had the duty to have the truck regularly serviced by a "qualified mechanic approved by [KSI]." The Commission further noted that a rental agreement provided that the driver did not have any property interest in the truck, but had the option to purchase the truck upon performance of all obligations under a rental agreement.[3]

The Commission also found that while there was testimony that the drivers could choose their own routes and refuse loads at will, the reality was that drivers chose the most direct route for economic reasons and had to accept loads in order to pay for

---

**3.** Appellants argue that Hurricane Express and Naedok should not be held accountable for the language used in the contracts between KSI and the truck drivers because Hurricane Express and Naedok were not parties to that agreement. However, the Commission specifically found that there was a lack of an "arms-length" relationship between Hurricane Express/Hurricane Logistics/KSI and the truck drivers, due in large part to Steinert's ownership of all of the entities involved in this trucking enterprise.

the truck. Finally, the Commission pointed out that the truck drivers were required to report to Hurricane Express and Naedok (to comply with DOT regulations) and that the failure to do so resulted in termination of the operating agreement with Hurricane Express/Naedok and termination of a rental agreement with KSI. Based upon these facts, fair-minded persons could have reached the same conclusion as the Commission. Accordingly, we affirm on this point.

The third and final argument made by appellants is that substantial evidence does not support the Commission's finding that Steinert's office staff and mechanics cannot be covered under the workers' compensation policy that he purchased for them. In reaching this conclusion, the Commission found that the evidence demonstrated that Steinert's employees were dually employed.

The dual-employment doctrine provides that when a general employer lends an employee to a special employer, the special employer becomes liable for workers' compensation only if (a) the employee has made a contract for hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work. *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 759, 840 S.W.2d 177, 178 (1992). When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workers' compensation. *Id.*, 840 S.W.2d at 178. Employment may also be dual in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. *Id.*, 840 S.W.2d at 178. When this separate identification can clearly be made,

the particular employer whose work was being done at the time of injury will be held exclusively liable. *Id.*, 840 S.W.2d at 178.

The only evidence presented on this issue was that (1) the employees hired by Steinert individually also worked for his other businesses; (2) Steinert purchased one workers' compensation policy to cover all of these employees; and (3) Steinert's insurance agent told the Commission's investigator that the workers' compensation policy purchased by Steinert covered all of these employees while working at any of Steinert's businesses. This is not substantial evidence supporting the finding that dual employment existed. To the contrary, all of the evidence presented demonstrates that there is no separate and distinct special and general employer. Steinert is both. While his employees may have worked at different times for Steinert's different companies, there is no evidence that Steinert was lending his employees to anyone other than himself.

The facts in the case at bar are very similar to those in *Great Central Ins. Co. v. Mel's Texaco*, 8 Ark.App. 236, 651 S.W.2d 101 (1983). There, our court affirmed the Commission's finding that the multiple business enterprises carried on by the appellee were so interrelated and connected as to constitute one sole proprietorship rather than a dual-employment situation. *Id.* at 240, 651 S.W.2d at 103. Likewise, Steinert's trucking enterprises are interrelated and connected, lacking the required elements for dual employment. Accordingly, we hold that substantial evidence does not support the Commission's findings that Steinert's office staff and mechanics are engaged in dual employment. As such, we reverse the Commission's conclusion that each of Steinert's business entities is required to purchase separate

workers' compensation policies for these employees.

Affirmed in part; reversed in part.

GLADWIN and MARSHALL, JJ., agree.