2011 Ark. App. 785

**Joseph WOODMANCY, Appellant**

v.

**FRAMCO, INC., Chartis Claims, Inc., and J & S Framing, Inc., Appellees.**

**No. CA 11–680.**

Court of Appeals of Arkansas.

Dec. 14, 2011.

Evelyn Elizabeth Brooks, Fayetteville, for appellant.

Jarrod S. Parrish, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Joseph Woodmancy appeals the denial of his claim that an injury to his head, right shoulder, and upper arm, which he sustained in a fall from a ladder on June 29, 2009, was compensable for purposes of workers' compensation. On the date of his claimed injury, Woodmancy was president of J & S Framing, Inc., and was hanging ceiling tiles in a Shelbyville, Tennessee Wal–Mart that was being remodeled.

An administrative law judge found that Woodmancy failed to prove by a preponderance of the evidence that his relationship with appellee, Framco, Inc., was that of employee-employer, finding instead that Woodmancy was an independent contractor. The Arkansas Workers' Compensation Commission affirmed and adopted the law judge's opinion. Woodmancy contends on appeal that substantial evidence does not support the Commission's decision that he was an independent contractor rather than Framco's employee. We disagree and affirm.

J & S, a company involved in the framing aspect of construction, had its own corporate bank accounts, a federal tax identification number, and a workers' compensation policy, from which Woodmancy had excluded himself through a certificate of noncoverage in his position as sole proprietor. Framco, Inc., made payment to J & S, and Woodmancy received payment through J & S in the form of salary. On appeal, Woodmancy acknowledges his intent in the beginning of the work relationship with Framco was that no taxes would be withheld from his pay and that he would not be covered by workers' compensation insurance.

Under Ark.Code Ann. § 11–9–402(c)(1)(A) (2011), "[w]hen a sole proprietorship or partnership fails to elect to cover the sole proprietor or partners under this chapter, the prime contractor is not liable under this chapter for injuries sustained by the sole proprietor or partners if the sole proprietor or partners are not employees of the prime contractor." The language of the subsection, rather than providing that subcontractors who are sole proprietors or partners are automatically considered employees based upon their decision not to obtain coverage for themselves or obtain a certificate of noncoverage, requires a determination whether individuals claiming status as sole proprietors or partners are independent contractors or employees of the prime contractor. *Aloha Pools & Spas, Inc. v. Employer's Ins. of Wausau*, 342 Ark. 398, 39 S.W.3d 440 (2000). This in turn requires an analysis of whether such an individual is a subcontractor, independent contractor, or, depending upon the right of control, an agent of the prime contractor who would be treated as an employee under our workers' compensation statutes. *Id.*

■ The following factors are to be considered in determining whether one is an employee or independent contractor:

(1) the extent of control which, by the agreement, the master may exercise over the details of the work;

(2) whether or not the one employed is engaged in a distinct occupation or business;

(3) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(4) the skill required in the particular occupation;

(5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(6) the length of time for which the person is employed;

(7) the method of payment, whether by the time or by the job;

(8) whether or not the work is a part of the regular business of the employer;

(9) whether or not the parties believe they are creating the relation of master and servant; and

(10) whether the principal is or is not in business.

342 Ark. at 406, 39 S.W.3d at 445.

■ When deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of proof on the issue has established it by a preponderance of evidence. Ark.Code Ann. § 11–9–705(a)(3) (Supp. 2011). The Commission determines the weight to be given various factors in determining whether an injured person is an employee or an independent contractor for purposes of workers' compensation coverage. *Grady v. Estate of Smith,* 2011 Ark. App. 568, 385 S.W.3d 854.

■■ If control of the work is control not only of the result but also of the means and manner of the performance, the relationship of master and servant follows; if control of the means is lacking and the employer does not undertake to direct the manner in which the employee shall work in discharging his duties, the relation of independent contractor exists. *Ark. Transit Homes, Inc. v. Aetna Life & Cas.,* 341 Ark. 317, 16 S.W.3d 545 (2000). The principal factor in determining whether the relationship is one of agency or independent contractor is the right of control. *D.B. Griffin Warehouse, Inc. v. Sanders,* 336 Ark. 456, 986 S.W.2d 836 (1999).

Woodmancy argues that the facts and circumstances of this case show that he was working as Framco's employee when he was injured on the remodeling job. He asserts that he was ignorant of how to do the job, for which he was in training; he was paid a rate set by Framco, not one that he had bid; he used Framco's equipment and tools; and he was no different from all other employees, whose taxes were being withheld and who were covered by workers' compensation insurance carried by Framco. He concludes that he was under the control of Framco.

■■ In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Cedar Chem. Co. v. Knight,* 372 Ark. 233, 273 S.W.3d 473 (2008). When the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief.

*Robinson v. Family Dollar Stores, Inc.,*
2011 Ark. App. 172, 2011 WL 714920.

Woodmancy testified that for thirty-eight years, his normal business had been framing houses, but the work had slowed down considerably at the end of June 2009 and he had put his license in an inactive state. He explained that he had lined up most J & S jobs by giving builders written bids; that he provided tools and hired up to twelve people to do the work; and that the work was basically building a house, starting from the cement slab and putting it all together through the drying process—roof, doors, and windows. He described the Shelbyville work as "totally different" because it involved tearing out cabinets, bathrooms, and pharmacies; laminating walls and countertops; rebuilding pharmacies; and re-doing ceilings. He said that he had never done that kind of work, that he used none of his framing tools in Shelbyville except for a drill, and that he did not know if the tools he used belonged to Framco.

Woodmancy testified that his directions regarding what to do in Shelbyville always came from Framco's president, David Reynolds, who never actually was there. Woodmancy said that he initially reported to Reynolds's employee Eric; by the time of the accident, Eric and all other Framco employees had left; and Eric's replacement was Rick, who had become the lead man on the job telling Woodmancy what to do. However, Woodmancy also testified that Rick was not a Framco employee and "possibly" could have been working for CalCon, the general contractor on the job.

Woodmancy testified that he initially chose to be paid by checks to J & S rather than himself because he was trying to hold onto his house and avoid paying taxes until the end of the year. He stated that he telephoned Reynolds the week before the accident to request that the checks be made to him and deductions be taken out, and that they orally agreed to make the change. He testified that through November 2009 he withdrew cash from J & S; that his 2009 tax return, reflecting the business activity "carpentry," showed a corporate return for J & S with gross receipts of $30,245; and that his tax return reflected projects done by him through J & S. Tax documents and checks on the J & S account were introduced into evidence. On appeal, Woodmancy acknowledges that at the beginning of his work relationship with Framco, his intent had been that no taxes would be withheld from his pay and he would not be covered by workers' compensation insurance.

David Reynolds testified that Woodmancy "specifically asked me to run him as an independent contractor under J & S. He was paid weekly $800. The checks were made to J & S." Reynolds testified that he had no tools at the Shelbyville job site; that Woodmancy was the only one on the job there; and that if Woodmancy had turned the job down, Reynolds would have told CalCon he could not find anyone. Reynolds agreed that Woodmancy asked him in a telephone call to become an employee, to be covered by insurance, and to pay social security.

The Commission found that some factors pointed to Woodmancy's being an employee and that some factors pointed to his being an independent contractor. The Commission made the following findings on specific factors regarding the work he performed at the Shelbyville job site. Any direction regarding what was to be done was given by CalCon, the general contractor, rather than Framco. Woodmancy was the only person there associated with Framco during the time period of his injury. The work Woodmancy was performing was construction work but somewhat different than the framing work of J & S,

in that it was in the form of remodeling and the use of metal studs instead of wood. Given Woodmancy's long history in the construction industry, he possessed the skills required—to use certain types of equipment and generally understand construction concepts. Woodmancy had basic tools on his tool belt with him and a drill he had purchased at Framco's request, but Framco supplied no tools at the Shelbyville site and Reynolds credibly testified that CalCon provided all tools there. Framco made all payments to J & S. The type of work that Woodmancy was performing at the site was exactly the type of work that Framco was engaged in at other locations.

The factor found by the Commission to be most important was whether Framco and Woodmancy believed they were creating the relationship of master and servant. It found pertinent to this subject the phone conversation between Woodmancy and Reynolds shortly before the accident. The Commission found that Woodmancy understood he was not an employee of Framco at the time of the conversation, he knew that J & S had current workers' compensation insurance, he had elected to not be covered, and he knew that the master-servant relationship did not exist between Framco and himself. In making these findings, the Commission noted the following testimony by Woodmancy:

I called Dave up on a Wednesday night and told Dave that I wanted to be—I wanted him to take all the deductions out of any check, that I had to be covered on these jobs for sure. . . . And he said that he had already written the checks. And so I said, okay, can we start Sunday night when we start the new work week. And he hesitated for a minute or so and said, okay, well, Sunday night. And then it was either Tuesday or Wednesday when I fell.

The Commission also noted that Reynolds testified about the involvement of J & S  Framing. Reynolds said that he offered Woodmancy employment, but Woodmancy "didn't want it. . . . He wanted it to be run through the company so that he didn't have to pay any taxes." Reynolds testified that Woodmancy "knew that he wouldn't be covered under work comp" and that Woodmancy said he had "work comp and general liability. And he provided them for me."

The decision of the Commission included the following analysis:

The scale was tipped to independent contractor because it is clear that is the relationship that both parties agreed to before the relationship began. This is not a case of a respondent taking advantage of an employee, the claimant in this matter is quite seasoned in the construction field and has owned construction companies. While the respondent does appear to have some of that same knowledge it seems to be as great as the claimants.

The Commission found that nothing had ever been done to change the relationship, independent contractor, the parties had agreed to enter into.

In order to reverse a decision of the Commission, we must be convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Id.* If reasonable minds could have reached the result shown by the Commission's decision, we must affirm. *Sys. Contracting Corp. v. Reeves,* 85 Ark.App. 286, 151 S.W.3d 18 (2004). The appellate court defers to the Commission on issues involving the weight of the evidence and the credibility of the witnesses. *Freeman v. Con–Agra Frozen Foods,* 344 Ark. 296, 40 S.W.3d 760 (2001). We view the evidence in the light most favorable to the Commis-

sion's decision and affirm if it is supported by substantial evidence. *Silvicraft, Inc. v. Lambert,* 10 Ark.App. 28, 661 S.W.2d 403 (1983).

The Commission examined the facts and circumstances of this case and concluded that |₉the most important factor was the kind of relationship the parties believed they had created. It was within the Commission's power to do so. We hold that the decision of the Commission, as summarized above, displays a substantial basis for the denial of this claim.

Affirmed.

VAUGHT, C.J., and PITTMAN, J., agree.