SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-12-1070

| | |
|---|---|
| JOE WATKINS<br>APPELLANT | **Opinion Delivered** August 28, 2013 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. F902904] |
| USA TRUCKING, INC.<br>APPELLEE | |
| | AFFIRMED |

**RITA W. GRUBER, Judge**

Joe Watkins appeals the denial of his workers' compensation claim that, while working as a long-haul truck driver and unloading tires from a tractor trailer, he suffered a compensable injury to his back and was entitled to medical and total-temporary disability benefits related to the injury. USA Trucking, Inc., controverted the claim in its entirety, contending that Watkins was not a USA employee. The Arkansas Workers' Compensation Commission, affirming and adopting a decision of an administrative law judge, found that Watkins failed to prove the existence of an employee-employer relationship. Watkins contends on appeal that substantial evidence does not support the Commission's decision that he was an independent contractor rather than an employee. We affirm.

When deciding any issue, administrative law judges and the Commission shall determine, on the basis of the record as a whole, whether the party having the burden of

SLIP OPINION

proof on the issue has established it by a preponderance of evidence. Ark. Code Ann. § 11-9-705(a)(3) (Supp. 2011). The appellate court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

We defer to the Commission on issues involving the weight of the evidence and the credibility of the witnesses. *Woodmancy v. Framco, Inc.*, 2011 Ark. App. 785, 387 S.W.3d 286. If reasonable minds could have reached the result shown by the Commission's decision, we must affirm. *Id.* When the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Id.*

The following factors are to be considered in determining whether one is an employee or independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Cloverleaf Express v. Fouts*, 91 Ark. App. 4, 16–17, 207 S.W.3d 576, 583 (2005). Here, the Commission found that some factors pointed to employee and others pointed to independent contractor, but that Watkins's "ownership of an essential piece of equipment, namely the truck/tractor, in his work activities" tipped the scale in favor of independent contractor.

The Commission considered a document entitled "Contractor Operating Agreement," signed by both parties, as the foundation of their relationship. The document stated that the agreement and intent of Watkins and USA was to "create an independent contractor relationship between the parties and not a master-servant, employer-employee or principal-agent relationship." The document included the obligations of Watkins as "contractor" and of USA as carrier:

> The contractor agrees to furnish the equipment together with drivers and all other necessary labor to transport, load, and unload on behalf of carrier or on behalf of such other certified carriers as carrier may designate through "trip lease" or interchange agreements, such commodities as the carrier may from time to time make available to the contractor.

The Commission discussed *Cloverleaf* factors that were relevant to the relationship between Watkins and USA, first reciting the following evidence pertinent to Factor (a)—the extent of control which, by the agreement, the master may exercise over the details of the work. USA would instruct Watkins to pick up a loaded trailer with his truck/tractor at point



A and deliver it to point B by a certain time and date. Other than his ability to refuse to carry a load and to have the dispatcher remove him from short loads and place him on longer ones, he had very little part in deciding the type of load or where it was to go. However, the Commission found that, "due to his ownership of the truck," Watkins did have the ability to control the details of taking the load: he had worked as owner/operator for other motor carriers, and testified that he operated his truck as owner/operator because he could make more money. He stated, "You just watch your money. You don't let your truck sit and run all night. You don't let it run all day if you're parked. You're easier on your tires. You can make stuff make last longer if you own it and take care of it." He answered affirmatively that he had an ownership interest, he operated as his "own business," and he was, to an extent, his own boss.

The Commission recited the following evidence relevant to Factor (b)—whether the one employed is engaged in a distinct occupation or business—and Factor (d)—the skill required in the particular occupation. Watkins was in a distinct occupation or business as an over-the-road truck driver, had a high level of skill involving the ability to move thousands of pounds of material via highways and interstates in a safe and efficient manner, and through tests to operate the tractor trailer, had shown the skills necessary for licensing or certification.

Under Factor (e)—which party supplied the instrumentalities, tools, and place of work for the person doing the work—the Commission noted the following evidence. First, Watkins owned his own truck/tractor. He testified that the differences between being a company driver or owner/operator were "money" and taking care of his own truck in the

4



way he wanted; that he purchased his truck from Mid-Am Truck in Missouri, not from USA, which told him only that the truck had to be 2001 or newer and had to pass USA's inspection; and that USA supplied him with a Qualcomm communications system, a fuel card, a DOT (Department of Transportation) card, and a card that allowed him to pass through certain tolls and weight stations. The Commission recited evidence that USA supplied the trailers and loads Watkins hauled with his truck/tractor; that although USA provided him a fuel card, it was his responsibility to pay for the fuel from money he earned by hauling freight for USA; and that he was required to pay USA for use or lease of the Qualcomm system.

The Commission found that the written "Contractor Operating Agreement" between USA and Watkins contained evidence of Factors (f) and (g). Pertinent to (f)—the length of time for which Watkins was employed—the contract required that either party provide the other with thirty days' written notice before terminating the contractual relationship. Pertinent to (g)—method of payment—were the contract's provision that Watkins would receive "$.90 per dispatched loaded and dispatched empty miles plus a fuel surcharge" and Watkins's testimony that he had left one motor carrier because its fuel surcharge was not passed along to him, which he felt he was entitled to.[1] Regarding Factor (h)—whether the work was part of the employer's regular business—the Commission found that the parties

---

[1]Watkins testified that when fuel prices were high, large carriers such as USA could negotiate an increased price with the shipper. He explained that he had left the former carrier because, unlike USA, they did not pay the fuel surcharge: "I felt I was entitled to the surcharge. Well, it is my truck. I was pulling their freight and if I could get my truck to run seven miles a gallon, I think I should have been compensated for it."



were each engaged in the business of using tractor trailers to transport freight across the country.

Factor (i) is whether the parties believed that they were creating the relation of master and servant. The Commission again recited the contract's description of Watkins as an independent contractor. From his testimony, the Commission found that Watkins was an experienced over-the-road truck driver with the ability to operate a truck efficiently and the skills to save himself money; that previously, under agreements similar to the one with USA, he had worked with other carriers and once had terminated employment; that he knew and understood his right to terminate his relationship with USA after thirty days' notice; and that he possessed a "sophisticated understanding of the owner operator or independent contractor versus company driver or employee statuses which seem to exist in the trucking industry as a whole."

Watkins focuses his argument on our observation that "[a]lthough no one factor of the relationship is determinative, the 'right of control' is the principal factor in determining whether the relationship is one of agency or independent contractor." *Cloverleaf*, 91 Ark. App. at 16, 207 S.W.3d 576, 583 (internal citations omitted). He asserts, as did the dissenting commissioner below, that his ownership of the truck should not have been determinative in deciding whether he was an employee or independent contractor. Much of his argument relies on *Steinert v. Arkansas Workers' Compensation Commission*, 2009 Ark. App. 719, 361 S.W.3d 858, which upheld the Commission's decision that truck drivers were employees despite a lease-operator contract's specification that they were independent contractors rather

than employees.

The present case is distinguishable from *Steinert*, where the appellants included Kaedon Steinert and his multiple trucking companies. Steinert was both president and sole stockholder of appellants Hurricane Express and Naedok, motor carriers that were authorized and licensed by DOT and FMCSA (Federal Motor Carrier Safety Administration). He was also sole stockholder of appellant Hurricane Logistics, a brokerage firm that located truck drivers and assigned them loads to haul, and of appellant KSI, a company that owned tractors and leased them to Hurricane Express and the drivers. A rental agreement specifically stated that the drivers were independent contractors rather than employees.

Under the facts of *Steinert*, we found that fair-minded persons could have reached the Commission's conclusion that an employer-employee relationship existed:

> The Commission . . . found that, despite the labels given by the parties, the truck drivers were employees subject to the control of Hurricane Express and Naedok. The Commission found that driving a truck was an integral part of the business of Hurricane Express/Naedok and that the drivers hauled loads exclusively for these motor carriers. The Commission cited evidence that the trucks the drivers used—owned by KSI—had the Hurricane Express logo on them. The Commission noted the rental agreement between KSI and the truck drivers that provided that the drivers were required to operate the truck under KSI's direction and under the operating authority of Hurricane Express. The agreement further provided that no person other than the driver may use the truck without the express written consent of KSI, that the driver may not assign the agreement or sublease the truck, and that the driver of the truck must be approved by KSI. The driver had the duty to have the truck regularly serviced by a "qualified mechanic approved by [KSI]." The Commission further noted that a rental agreement provided that the driver did not have any property interest in the truck, but had the option to purchase the truck upon performance of all obligations under a rental agreement.
>
> The Commission also found that while there was testimony that the drivers could choose their own routes and refuse loads at will, the reality was that drivers chose the most direct route for economic reasons and had to accept loads in order to pay for the truck. Finally, the Commission pointed out that the truck drivers were

7


required to report to Hurricane Express and Naedok (to comply with DOT regulations) and that the failure to do so resulted in termination of the operating agreement with Hurricane Express/Naedok and termination of a rental agreement with KSI.

2009 Ark. App. 719 at 8–9, 361 S.W.3d 858, 864–65 (footnote omitted). We noted that the Commission found "a lack of an 'arms-length' relationship between Hurricane Express/Hurricane Logistics/KSI and the truck drivers, due in large part to Steinert's ownership of all of the entities involved in this trucking enterprise." *Id.* at 9, n.3, 361 S.W.3d at 864–65, n.3.

Watkins argues that even though much of USA's control over him was mandated by DOT regulations, like in *Steinert*, extensive control brought the relationship within the realm of an employer-employee relationship and workers' compensation coverage. He asserts that the determinative factor in his relationship with USA was not his ownership of the truck, but USA's right to control him as a driver. He points to the dissenting commissioner's summary of evidence regarding his lack of freedom to control his own driving: he had to pull USA's trailers and was not free to pull for other carriers; he was dispatched and his truck was loaded by USA; his driving was monitored by the Qualcomm system USA placed in his truck; USA provided him a fuel card, driving card, DOT card, and pass for some state scales; and—most important—had to affix USA's logo to his truck, as required by DOT.

We agree with USA's argument that this case is unlike *Steinert*, where there was no arms-length relationship between three trucking entities and truck drivers. The present case involved instead a legitimate business deal between two competent parties, with each benefiting from the nature of the independent-contractor relationship. *See Woodmancy v.*

*Framco, Inc.*, 2011 Ark. App. 785, at 8, 387 S.W.3d 286, 291 (reciting the Commission's conclusion that "[t]his is not a case of a respondent taking advantage of an employee, the claimant in this matter is quite seasoned in the construction field and has owned construction companies.") USA notes that Watkins was legal owner of his truck, did not buy it from USA or make truck payments to USA, and had previously purchased other trucks while working as an independent contractor for different motor carriers. USA asserts that owning his truck enabled Watkins to care for it in such a manner as to maximize profit, that he knew what he was doing, that he did not want to be a company driver, and that he was successful.

The Commission determines the weight to be given various factors in determining whether an injured person is an employee or an independent contractor for purposes of workers' compensation coverage. *Grady v. Estate of Smith*, 2011 Ark. App. 568, 385 S.W.3d 854. The principal factor in determining whether the relationship is one of agency or independent contractor is the right of control. *D.B. Griffin Warehouse, Inc. v. Sanders*, 336 Ark. 456, 986 S.W.2d 836 (1999). On the issue of control, our supreme court has stated:

> The governing distinction is that if control of the work reserved by the employer is control not only of the result, but also of the means and manner of the performance, then the relation of master and servant necessarily follows. But if control of the means be lacking, and the employer does not undertake to direct the manner in which the employee shall work in the discharge of his duties, then the relation of independent contractor exists. [Citations omitted.]

*Ark. Transit Homes, Inc. v. Aetna Life & Cas.*, 341 Ark. 317, 321, 16 S.W.3d 545, 547 (2000).

It was up to the Commission to interpret the evidence before it and to weigh the various factors in the relationship between USA and Watkins. It was within the Commission's power to conclude that, under the facts and circumstances of this case, the most

important factor was Watkins's owning his truck. The Commission reasoned that Watkins's relationship with USA enabled him to "take advantage of his experience and his ownership of the truck and efficiently control his gas usage, maintenance and time to create more money earning opportunities for himself." The Commission noted that he had terminated a relationship with a previous employer due to a disagreement and that his contract with USA allowed him—had he chosen to quit carrying loads for USA—to give thirty days' notice, take his truck, and find another carrier in the marketplace to engage in the same type of over-the-road truck-driving activities.

We hold that the decision of the Commission displays a substantial basis for the denial of Watkins's claim that he was an employee rather than an independent contractor. Accordingly, his claim for related benefits is moot.

Affirmed.

PITTMAN and WYNNE, JJ., agree.

*The McNeely Law Firm, PLLC*, by: *Steven R. McNeely*, for appellant.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *R. Scott Zuerker*, for appellee.