SLIP OPINION

Cite as 2013 Ark. App. 572

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-13-401

JONATHAN JORDAN
APPELLANT

V.

HOME DEPOT, INC., and AMERICAN
HOME ASSURANCE COMPANY
APPELLEES

**Opinion Delivered** October 9, 2013

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. F504518]

AFFIRMED

## RITA W. GRUBER, Judge

In *Jordan v. Home Depot, Inc.*, CA 07-1031,(Ark. Ct. App. March 19, 2008) (unpublished), Jonathan Jordan appealed a 2007 decision of the Arkansas Workers' Compensation Commission that denied his claim for additional medical treatment and additional temporary total-disability benefits related to his 2003 compensable back injury. We reversed and remanded the denial of additional medical benefits, and reversed and remanded for reconsideration of disability benefits. In a subsequent decision of September 2008, the Commission found that medical services provided and recommended by Dr. Cyril Raben—including possible surgical intervention—were reasonably necessary medical services for Mr. Jordan's compensable lumbar injury, and that Mr. Jordan was entitled to additional temporary total-disability benefits from the cessation of his employment in mid-2004 but not prior to July 15, 2004, and continuing through a date yet to be determined. That decision was not appealed.

The present appeal involves Mr. Jordan's claims for an additional period of temporary total-disability benefits from February 2011 until a date to be determined and for additional medical treatment recommended by Dr. James Blankenship. In a 2012 opinion, the Commission found that Mr. Jordan did not prove entitlement to additional temporary total-disability benefits but did prove entitlement to medical services recommended by Dr. Blankenship. Mr. Jordan appeals the denial of additional temporary total-disability benefits, contending that substantial evidence instead supports a finding that he was entitled to benefits from February 2011 to a date yet to be determined.[1] Home Depot cross-appeals, contending that no substantial evidence supports the finding that additional medical treatment is reasonably necessary in connection with the 2003 compensable injury. We affirm on appeal and cross-appeal.

Where the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the findings of the Commission and will affirm if those findings are supported by substantial evidence. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 602–603, 120 S.W.3d 153, 155 (2003). Where the Commission denies benefits because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Woodmancy v. Framco, Inc.*, 2011 Ark. App. 785, 387 S.W.3d 286.

---

[1]Appellant misstates the substantial-evidence standard of review for the denial of a claim. On the issue of additional temporary total-disability benefits, our role is limited to determining whether substantial evidence supports the Commission's denial of the claim. *Foster v. Gilster Mary Lee Corp.*, 2011 Ark. App. 735, 387 S.W.3d 212.



*Temporary Total-Disability Benefits*

On direct appeal, Mr. Jordan challenges the Commission's finding that he was not entitled to temporary total-disability benefits. The healing period is that period for healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12) (Repl. 2012). An injured employee is entitled to temporary total-disability benefits when he is totally incapacitated from earning wages and remains in his healing period. *Hickman v. Kellogg, Brown & Root*, 372 Ark. 501, 277 S.W.3d 591 (2008). The healing period ends when the employee is as far restored as the permanent nature of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Id.* The determination of when the healing period has ended is a factual determination for the Commission. *Id.*

Evidence before the Commission included Mr. Jordan's medical records, his testimony before the law judge at an April 2012 hearing, and the deposition testimony of Dr. Blankenship. The 2009 medical records reveal that Dr. Raben performed a caudal epidural steroid injection in February, a bilateral neural forminal block at L5–S1 in May, and surgery at L4–5 and L5–S1 in June or July. Dr. Raben referred Mr. Jordan to pain-management physician Dr. D. Wayne Brooks, who in March 2010 planned to continue physical therapy for strengthening and lumbar stabilization. Dr. Brooks referred Mr. Jordan to Dr. James B. Blankenship, a neurosurgeon certified in pain management, in November 2010.

Mr. Jordan underwent a lumbar MRI on June 1, 2011, and first saw Dr. Blankenship on June 6, 2011. Dr. Blankenship recommended a sacroiliac (SI) joint injection, active

physical therapy, and after two months, "If he is not any better, . . . a CT scan with reconstructions—to evaluate the construct, and I will see him back. If he is doing better, we will proceed on with exercise as appropriate for his SI joint pain and his post laminectomy syndrome."

Regarding Mr. Jordan's healing and treatment for pain, Dr. Blankenship testified:

> He had some intermittent right posterior buttock pain for the past three months. . . . Essentially Jordan had a fusion at L4-5 and L5-S1. I am intimately familiar with those procedures. The length of time a patient remains in their healing period is extremely variable. The fusion itself is not the critical issue. The fusion can take up to six months to a year to be solid, but . . . how quickly you get to fusion doesn't really have anything to do with how well you do. I will have some patients that undergo a 4-5, 5-1 fusion, and four weeks postoperatively, they are back doing their regular job. Then I will have some that never get any better. . . .
> Mr. Jordan indicated that his back and leg pain were better after that surgery. If he continued to treat with Dr. Brooks for pain management, it is not necessarily part of the healing period. It is just that some patients that are still having problems or still having some degree of pain will still need some type of either pain management from a medication standpoint or physical therapy or a combination of both postoperatively and can need that even long-term. It doesn't state one way or the other as to whether he is still healing or is in the recuperative period because . . . although not the typical outcome, it is not infrequent that I will have patients that we will still be following for long term after having surgery. My interpretation of the MRI was that there was no gross complication in his implants. It appeared, both with the MRI and his plain films that he had a solid fusion, although you cannot absolutely state that with either of those tests. That requires a CT scan.

Dr. Blankenship testified that Mr. Jordan's clinical examination was consistent with his complaints of SI joint pain, which was not uncommon after a fusion, and that it was not uncommon for patients "to experience some level of symptomatology indefinitely" after the fusion. Reiterating that Mr. Jordan's pain was in an adjacent segment well known to have problems after lumbar fusion, Dr. Blankenship stated, "I didn't really think that he had a problem with his lumbar spine. I thought it was his SI joint." He further testified:

4

Whether Jonathan has reentered a healing period it is just from the standpoint that he is having a new pain, if we are doctoring on it, then he has entered a new healing period. I am not sure that terminology is that germane. He is not entering a healing period from his lumbar fusion. That is healed up, and he is solid. The new pain, at least as far as I know, he never did get his SI joint injections, so it is still a diagnosis of examination and clinical history. It is a new problem in a new area. I still think it is related to the fact that he had a lumbar fusion. So he is in a new healing period for that that is indirectly related to his original injury. As far as a permanent impairment for that fusion that he had at those two levels, . . . subjective complaints [really don't matter] when you are dealing with workers' compensation. The Fourth Edition of the AMA Guides is ten percent. . . . So it is a ten-percent impairment rating to the body as a whole, based on the guidelines.

Dr. Blankenship stated that a functional-capacity exam (FCE) was always helpful at the end of treatment and would be beneficial in determining whether any type of activity could be tolerated. He stated that Mr. Jordan had not received physical therapy in more than a year, that patients "get significantly de-conditioned," and that Mr. Jordan's underlying condition "no doubt" was affected by the delay in his not seeing Dr. Blankenship until June 2011, despite the November 2010 referral.

Mr. Jordan notes that he received pain management from February 2011 until June 2011 but did not see a neurosurgeon during that time despite requests by his counsel after Dr. Raben left practice and Dr. Brooks's 2010 recommendation. He asserts that in February 2011 he was not even to the point that an FCE should be performed and that his back was in all probability de-conditioned due to the lack of treatment. He notes that neither Dr. Raben nor Dr. Brooks released him to work or opined that he was at maximum medical improvement. He asserts that the Commission misused Dr. Blankenship's deposition testimony regarding an impairment rating, which was based only on the type of surgery and not on Mr. Jordan's individual condition. He contends that his healing period did not end, entitling him to

 

benefits from February 2011 to a date to be determined.

The Commission found that Mr. Jordan's healing period for the compensable injury ended before February 2011 and, thus, that he was not entitled to additional temporary total–disability benefits beginning on that date. The Commission reasoned as follows:

> An MRI on June 1, 2011 showed "no gross complication" from the claimant's 2009 surgery. Dr. Blankenship testified in May 2012 regarding the claimant, "He's not entering a healing period from his lumbar fusion. That's healed up. He's solid." Dr. Blankenship also testified that the claimant had sustained a 10% permanent anatomical impairment to his lumbar spine. . . . The evidence in the present matter demonstrates that the claimant has sustained a permanent anatomical impairment for his 2003 compensable injury and surgery, and the claimant has reached the end of the healing period for same.

The Commission noted Dr. Blankenship's testimony that a new healing period for new pain would be related to the SI joint rather than the fusion. Based upon his assessment of a ten-percent impairment, the Commission found that the lumbar condition had stabilized and become permanent. Finally, the Commission found that even if the healing period continued, Mr. Jordan did not prove a total incapacity to earn wages. It pointed to his testimony that he was able to drive a motor vehicle and to participate in physical activities such as hunting and camping.

It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008). In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). The issue is not whether the appellate court might have reached a

different result from the Commission, but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007).

Here, the Commission exercised its duty to assess the weight and credibility of evidence regarding whether Mr. Jordan's healing period had ended and whether he was totally incapacitated from earning wages. We hold that substantial evidence supports the factual findings that the healing period ended by February 2011 and that Mr. Jordan was not totally incapacitated from earning wages. Therefore, the Commission's opinion displays a substantial basis for the denial of his claim for an additional period of temporary total-disability benefits.

*Additional Medical Services*

An employer must provide for an injured employee such medical services "as may be reasonably necessary in connection with the injury received by the employee." Ark. Code Ann. § 11-9-508(a) (Repl. 2012). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

Cross-appellant Home Depot contends that substantial evidence does not support the Commission's award of additional medical services recommended by Dr. Blankenship. Pointing to Dr. Blankenship's opinion that Mr. Jordan's lumbar fusion was solid and that his pain complaints were related to SI joint pain, Home Depot argues that there is no causal relation between the proposed treatment for Mr. Jordan's lumbosacral problems and his

original injury. We disagree.

The Commission found Dr. Blankenship's testimony that Mr. Jordan's SI joint pain was "related to the fact that he had a lumbar fusion" to be probative evidence demonstrating that his need for additional medical treatment was related to the reasonably necessary surgery by Dr. Raben in 2009. The Commission noted that no medical reports of record contradicted Dr. Blankenship's opinion. The determination of the need for additional medical treatment turned on the interpretation of Dr. Blankenship's opinion. The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). We are unable to say that reasonable minds could not come to the decision of the Commission that the medical services recommended by Dr. Blankenship were not reasonably related to the 2009 fusion surgery, which itself was reasonably necessary surgery for the 2003 lumbar injury.

Affirmed.

HIXSON and WOOD, JJ., agree.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.

*Roberts Law Firm, P.A.*, by: *Jeremy Swearingen* and *Emily A. Neal*, for appellees.