


Cite as 2014 Ark. App. 493

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-51

| | |
|---|---|
| GEORGE THOMPSON<br>APPELLANT | **Opinion Delivered** September 24, 2014 |
| V. | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. F509124] |
| MOUNTAIN HOME GOOD<br>SAMARITAN VILLAGE, SENTRY<br>INSURANCE COMPANY, AND<br>DEATH & PERMANENT TOTAL<br>DISABILITY TRUST FUND<br>APPELLEES | AFFIRMED IN PART; REVERSED<br>AND REMANDED IN PART |

## RITA W. GRUBER, Judge

George Thompson appeals the December 2013 decision of the Arkansas Workers' Compensation Commission regarding his claim for additional benefits related to his 2005 compensable back injury. As his first point, he contends that the Commission disregarded overwhelming evidence of his permanent and total disability. Second, and alternatively to the first point, he contends that the ten-percent wage-loss award is unsupported by substantial evidence and ignores his complete loss of earning potential. Third, he contends that substantial evidence does not support the Commission's finding that his impairment rating to the body as a whole is merely five percent. Fourth and last, he challenges the constitutionality of the Arkansas Workers' Compensation Act. We reverse and remand for further findings on point 3, remand for further consideration of point 2, and affirm points 1 and 4.

SLIP OPINION

Thompson sustained his compensable injury in April 2005 while working in Good Samaritan Village's maintenance department and while lifting a large television. After receiving conservative care and pain-management treatment from various physicians, he was granted a change of physician to neurosurgeon Dr. Rebecca Barrett-Tuck and saw her in a July 2006 office visit. Respondents did not accept a ten-percent permanent partial-impairment rating to the body as a whole assigned by Dr. Barrett-Tuck on September 16, 2008.

At a May 1, 2013 hearing before an administrative law judge, the parties stipulated that maximum medical improvement had been reached and the healing period had ended on September 16, 2008. Controverted issues at the hearing included the ten-percent permanent partial impairment rating assigned by Dr. Barrett-Tuck, additional medical treatment, and permanent and total disability. Live testimony was given by Thompson; Mike Magee, his friend, bowling and golfing companion, and pharmacist; Bill Koop, Thompson's neighbor; and Anita Hall, whom Thompson described as his "significant other." Thompson's medical records, a vocational evaluation by Bob White, and depositions by Thompson and Dr. Barrett-Tuck were also introduced into evidence. In his request for medical treatment, Thompson explained that he had been unable to undergo any back surgery because of an abdominal aneurysm and that he was receiving treatment for pain management from his personal physician, Dr. Tim Paden.

In a written decision, the law judge found that Thompson did not meet his burden of proof that surgery was reasonable and necessary or that he was permanently and totally

disabled.  The law judge found that Thompson had proved entitlement to additional pain management, including prescription medication and rhizotomies, as reasonable and necessary medical treatment; a permanent partial-impairment rating of five percent to the body as a whole; and ten-percent wage-loss-disability benefits over and above the five-percent impairment rating.  The Commission adopted and affirmed the law judge's decision.

I. *Denial of Claim for Permanent and Total Disability*
II.  *Wage-Loss Award of Ten Percent*

Permanent total disability is defined by statute as the inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 2012). The employee bears the burden of proving the inability to earn any meaningful wage. Ark. Code Ann. § 11-9-519(e)(2) (Repl. 2012). In considering claims for permanent partial-disability benefits in excess of the percentage of permanent physical impairment, the Commission may take into account such factors as the employee's age, education, work experience, and other matters  reasonably expected to affect his or her future earning capacity. Ark. Code Ann. § 11-9-522(b)(1) (Repl. 2012). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Cross v. Crawford Cnty. Mem'l Hosp.*, 54 Ark. App. 130, 923 S.W.2d 886 (1996).  Thompson contends that his compensable back injury rendered him permanently and totally disabled.  Alternatively, he argues that the ten-percent wage-loss award is far too low and that an award of at least seventy-five percent is more reasonable.

Thompson points to the opinion of Dr. Barrett-Tuck that he is permanently and totally disabled and the opinion of Bob White that no jobs are available if he cannot work at

3

Good Samaritan; the continuation of his intractable pain despite extensive conservative treatment; all remaining medical records; and his and Magee's testimony that he (Thompson) cannot sustain prolonged standing or walking and is unable to engage in work or activities such as golfing and bowling due to his pain, numbness, and need for pain medication. He asserts that all his work experience involved physical labor that he now cannot perform; his physical ability declined after his injury until he simply could not continue; and his chronic pain and the medical findings corroborate the opinions of Dr. Barrett-Tuck and Mr. White and the Social Security Administration's finding that he is permanently and totally disabled. He asserts that any lack of motivation he may have about returning to work is natural and cannot reasonably be held against him and that the Commission's reference to the lack of a functional-capacity examination is an unreasonable, insufficient, and conjectural basis on which to discredit the overwhelming majority of the evidence establishing permanent and total disability.

The Commission summarized Dr. Barrett-Tuck's notes from March through September 2008 as follows. On March 11, 2008, Thompson would "not be able to return to work." On May 14, 2008, his pain was stable and perhaps a bit better, he delayed plans for a spinal-cord stimulation because he lacked insurance coverage; an Aspen posterior-fusion device was seen as a good option should his pain persist, and a follow-up MRI was recommended. On September 16, 2008, Dr. Barrett-Tuck wrote:

> He is still considering the possibility of a fusion in the future, but as it stands now he does not have any insurance to cover surgical intervention. I have recommended a 10% impairment rating to the body as a whole in relation to the lifting injury that occurred several years ago . . . . He has disc bulges with resultant lateral recess stenosis

4

that we have discussed the possibility of a posterior fusion and clamping for treatment. He has also considered a spinal cord stimulator.

On the same date, she signed a pre-printed statement of her belief within a reasonable degree of medical certainty that as a result of his work injury sustained at Good Samaritan, Thompson was permanently and totally disabled and was entitled to the ten-percent impairment rating.

The Commission also noted the February 16, 2008 report of Thompson by Bob White, a vocational-evaluation specialist:

> For obvious reasons George Thompson states he has tried to keep his job and continue working as he recognizes that once he leaves, income, insurance, retirement all come into question. He also states his doctor, Rebecca Barrett-Tuck has encouraged him to leave for health reasons and possible further continued deterioration of his spinal problems related to returning to work.
>
> I have stated to George that I always encourage any individual to work as long as possible however, there comes a time when you must weigh continued employment against health issues and make a decision as to what is in your best interest in terms of quality of life issues. I do not have the answer to those questions-they must be decided between Mr. Thompson and his treating physician.
>
> . . . .
>
> Vocationally, if George and his doctor determine he should not continue in his job I have nothing to offer him from the standpoint of employment or related options. At age 58, with a 10th grade education, working in the area of painting and carpentry with light duty afforded him with his employer, if he cannot continue in this work, the combination of factors cited above will eliminate him from all jobs for which he might otherwise be qualified.

The Commission observed that Thompson was sixty-three years old, had a tenth-grade education and no GED, but could read, write, and do basic math. The Commission summarized other evidence as follows:

> His work history before Good Samaritan included stints in construction—painting and carpentry—along with an extended job as a forklift driver. He worked for Good Samaritan for 19 years in the maintenance department. This position included the installation and/or removal of appliances, and helping at times with residents. His

5

compensable . . . injury in April 2005 occurred as the result of his lifting a large television. As documented above, he has undergone extensive conservative treatment and multiple diagnostic procedures. The only procedure [that] has given him lasting relief was a rhizotomy. As addressed [within this opinion, he has been] awarded additional treatment in this area. Dr. [Greg] Elders gave him an "interim" 20-pound lifting restriction pending a rating by his surgeon. While Dr. Barrett-Tuck at one point had him on a 25-pound restriction, she eventually opined that he was permanently and totally disabled and could no longer work. Claimant's abdominal aortic aneurysm prevents him from undergoing surgical treatment; but . . . Dr. Barrett-Tuck is apparently not anxious to pursue that avenue anyway because Claimant's lumbar condition is not severe enough to warrant it.

Claimant resigned in March 2008 from Good Samaritan because, per his resignation letter, he had work restrictions and could not obtain a release from his doctor. But this does not comport with his testimony that he was still working there at this point. Furthermore, he admitted that he made no effort to obtain such a release. After his injury, he only worked at full duty for "just a short time," and the heaviest thing he lifting [sic] during this time weighed around 75 pounds. While his hearing testimony was that following his injury, Good Samaritan only let him work a few hours each day, this conflicts with his deposition testimony.

According to Claimant, he has problems standing. Numbness in his left leg results from standing too long. However, . . . shifting positions helps with this. He is taking medication, including Vicodin, for his pain. While he termed most of his days as "bad" ones, where his pain is 6/10 to 10/10, at another point he termed his maximum pain as 8/10. And again, he has been awarded additional pain management.

The Commission noted the testimony of Thompson and others that he was still able to drive, perform housework, and help care for Hall's grandchildren. The Commission credited Magee's testimony that Thompson had golfed since his injury over Thompson's testimony to the contrary. However, the Commission found that Thompson's testimony that continual back pain had clearly curtailed his previous activities was corroborated by the testimony of Magee, Hall, and Koop.

The Commission observed that White was unable to opine whether Thompson could continue in his former job at Good Samaritan but did opine that he would be unable to find

other employment should he not be able to work there, and the Commission noted the lack of a functional-capacity evaluation in evidence. Assessing the credibility of the evidence, the Commission specifically stated that it did "not find" that Thompson was motivated to return to the workforce.

The Commission concluded that Thompson had not proved permanent and total disability. Upon considering his age, education, work experience, the nature and extent of his compensable injury, his permanent restriction, and other relevant factors, it found that he had sustained a ten-percent impairment to his wage-earning capacity in excess of the five-percent anatomical impairment to the body as a whole in connection with his compensable lower back injury, which was the major cause of the wage-loss disability.

When deciding any issue, administrative law judges and the Commission shall determine whether the party having the burden of proof on the issue has established it by a preponderance of evidence. Ark. Code Ann. § 11-9-705(a)(3) (Supp. 2011). We review the evidence in the light most favorable to the findings of the Commission, and we will affirm if those findings are supported by substantial evidence. *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, 430 S.W.3d 136. Where the Commission denies benefits because the claimant failed to meet his burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id*.

The issue on review is not whether the evidence would have supported a contrary finding or whether we might have reached a different result; we affirm if reasonable minds could reach the Commission's conclusion. *Sanchez v. Pork Grp., Inc.*, 2012 Ark. App. 570.

We defer to the Commission on issues involving the weight of the evidence and the credibility of the witnesses. *Woodmancy v. Framco, Inc.*, 2011 Ark. App. 785, 387 S.W.3d 286. The Commission may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Rheem Mfg., Inc. v. Bark*, 97 Ark. App. 224, 245 S.W.3d 716 (2006).

Here, the Commission's denial of Thompson's claim for permanent and total disability, and its finding that he sustained only a ten-percent wage loss, turned on the Commission's assessment of the weight of the evidence and the credibility of witnesses. We hold that the Commission's decision displays a substantial basis for the denial of his claim for permanent and total disability. We remand the wage-loss issue for the Commission to consider whether our reversal of the five-percent impairment rating, *see* point 3, affects Thompson's ability to earn a livelihood and therefore affects the wage-loss factor.

### III. *Impairment Rating*

"Permanent impairment" has been defined as "any permanent functional or anatomical loss remaining after the healing period has ended." *Main v. Metals*, 2010 Ark. App. 585, at 9, 377 S.W.3d 506, 511. Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). Under Arkansas Code Annotated section 11-9-102(4)(F)(ii) (Repl. 2012),

> (a) Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment.

> (b) If any compensable injury combines with a preexisting disease or condition or the

8

natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

The Commission is authorized to decide which portions of the medical evidence to credit and to translate this evidence into a finding of permanent impairment using the American Medical Association Guides; thus, the Commission may assess its own impairment rating rather than rely solely on its determination of the validity of ratings assigned by physicians. *Firestone Bldg. Products v. Hopson*, 2013 Ark. App. 618, 430 S.W.3d 162.

Here, the Commission discussed Thompson's entitlement to an impairment rating and attendant permanent partial–disability benefits as follows:

> As discussed above, Dr. Barrett–Tuck assigned Claimant a rating of ten percent (10%) to the body as a whole. She stated that she utilized the AMA Guides in making this assignment, and that the bases for it are his annular tears.
>
> In *Coleman v. Pro Transportation*, 2006 AWCC 48, Claim No. F210837 (Full Commission Opinion filed March 14, 2006), rev'd on other grounds, 97 Ark. App. 338, 249 S.W.3d 149 (2007), the Commission wrote:
>
>> Even if the compensable injury was the major cause of the degenerative bulging and annular tear, there is no provision in the Guides for assigning permanent impairment based on an annular tear. Moreover, the Commission in previous cases has cited expert medical testimony indicating that an annular tear cannot form the basis for an impairment rating pursuant to the Guides.
>
> (Citations omitted.) As alluded to above, the Arkansas Court of Appeals reversed, finding that Claimant was entitled to a lumbar rating. *Coleman v. Pro Transportation*, 97 Ark. App. 338, 249 S.W.3d 149 (2007). In so doing, however, the court did not reject the Commission's holding that, standing alone, an annular tear cannot form the basis for a rating. Rather, the court credited the testimony of the opining physician that spondylosis (along with subjective findings, which the court stated were insufficient by themselves to support a rating) was present as well. Thus, the Court of Appeals' decision in *Coleman* is distinguishable from the case at hand. Claimant's annular tear alone does not permit the awarding of an impairment rating, and permanent partial disability benefits therefor. *But see Dokes v. Smart Style*, 2012 Ark. App. 696

("Appellant must prove that the annular tear resulted from the compensable injury before she is entitled to an impairment rating resulting from that tear . . . .") Thus, [the Commission] cannot credit Dr. Barrett-Tuck's finding on this matter.

But Claimant also suffered what his 2005 MRI report described as a "mild right-sided foraminal bulge" at L4–5. The CT scan that year documented it as a "small broad-based disc bulge." The 2007 MRI reflected a "very slight annular bulge" at this level. The 2010 CT scan and the 2011 MRI documented the bulge as well.

The Commission applied Dr. Barrett-Tuck's finding that this bulge was caused at least in part by Thompson's work-related injury, and the Commission found that Thompson was entitled to a five-percent rating under Table 75, Disorder II(B), for a disc lesion that is "[u]noperated on, stable, with medically documented injury, pain, and rigidity associated with none to minimal degenerative changes on structural tests such as . . . magnetic resonance imaging." The Commission also found that Thompson's compensable back injury was the major cause of his impairment.

Thompson argues that the Commission improperly applied Table 75 by relying on Disorder II(B) rather than Disorders II(C) and II(F), which assign higher impairment ratings for moderate to severe degenerative changes and for multiple levels. Respondents argue that there was no evidence that the annular tear—noted by Dr. Barrett-Tuck—resulted from his compensable injury. They further argue that because Dr. Barrett-Tuck's assignment of a rating was improperly based on an annular tear, the Commission correctly disregarded it and assigned its own impairment rating under Table 75 Disorder II(B).

The Commission rejected Dr. Barrett-Tuck's assignment of an impairment rating upon the Commission's finding that she relied solely on the presence of the annular tear. We reverse this finding in light of her deposition testimony. She testified that the annular tear and

10

disc protrusion were objectively related to the injury, that there was a combination of a tear and degenerative changes, that the major cause of Thompson's symptoms was his injury, and that she considered the annular tears and disc bulge in assigning the impairment rating. In light of this testimony, we remand to the Commission for further findings on the issue of impairment. We also observe that an impairment rating may be based on annular tears only if the tear resulted from the compensable injury. The determination of whether a causal connection exists is a fact question for the Commission to determine. *Dokes v. Smart Style*, 2012 Ark. App. 696.

### IV. *Constitutional Challenge*

The Commission denied Thompson's "Motion to Recuse and Notice of Intent to Introduce Evidence at Hearing," in which he argued that the provisions of the Arkansas Workers' Compensation Act providing for the establishment of administrative law judges are unconstitutional. The Commission correctly ruled that the points raised in the motion were identical to those considered and rejected by this court in *Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007), that Thompson did not seek to distinguish *Long* or to argue that it should be modified or overruled, and that the Act is constitutional. We direct counsel's attention once again to *Long*, and we again reject his arguments and affirm the Commission's decision affirming the constitutionality of the Act.

Affirmed in part; reversed and remanded in part.
WHITEAKER and VAUGHT, JJ., agree.
*Frederick S. "Rick" Spencer*, for appellant.
*Micheal Alexander*, for appellees.