SLIP OPINION

Cite as 2015 Ark. App. 309

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–1101

|  |  |
|---|---|
| | **Opinion Delivered** May 6, 2015 |
| GOLDEN YEARS MANOR and CANNON COCHRAN MANAGEMENT SERVICES, INC.<br>APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. F909336] |
| V. | |
| KELLEY DELARGY<br>APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellants Golden Years Manor and Cannon Cochran Management Services, Inc., appeal the November 18, 2014 decision of the Arkansas Workers' Compensation Commission (Commission) granting appellee additional benefits in the form of temporary-total–disability benefits (TTD) from May 11, 2011 until August 1, 2011, and from March 9, 2012 through February 12, 2013. The Commission also found that appellee had proved that she had sustained 14 percent permanent anatomical impairment, as well as 25 percent wage-loss disability. On appeal, appellants contend that (1) this court's decision in *Delargy v. Golden Years Manor*[1] was in error because this court improperly decided the issue of appellee's receipt of the Form AR–N and (2) the evidence was insufficient to support the Commission's finding

---

[1]2014 Ark. App. 499, 442 S.W.3d 889.

that appellee's treatment by Dr. Richard D. Peek was reasonable and necessary and that appellee was entitled to TTD, permanent impairment, or wage-loss disability. We affirm.

Appellee suffered a compensable lumbar-spine injury on October 13, 2009, when helping to lift a resident from the floor to an ambulance stretcher while working as a licensed practical nurse for appellant Golden Years Manor. Appellants paid for medical treatment and other benefits until August 2010. The payments ceased following appellee's release by Dr. Edward H. Saer, III. Dr. Saer opined that appellee had reached maximum medical improvement (MMI) as of June 17, 2010, with no impairment rating for the work-related injury. Appellee began treating with Dr. Peek on March 29, 2011. Dr. Peek performed back surgery on appellee on May 11, 2011. Appellee's pain improved, and she was able to return to work in August 2011. Appellee subsequently received trigger-point injections in September, November, and January. She continued to work through January 31, 2012. Dr. Peek opined on March 9, 2012, that appellee was "disabled from employment." He recommended that appellee undergo another surgery on her back. Appellee's second surgery took place on April 10, 2012. Her pain decreased, and she received a trigger-point injection on May 10, 2012. In February 2013, Dr. Peek stated that it was his opinion that appellee's back injury in October 2009 resulted in 25 percent permanent impairment to the body. The parties stipulated that appellee reached MMI on February 12, 2013.

In the prior appeal, this court reversed the Commission's finding that appellee was not entitled to further benefits because we held that appellee was not properly notified of her

change-of-physician rights and responsibilities.[2] We remanded the case to the Commission

so that it could consider the other controverted issues in light of our holding that the change-

of-physician rules did not apply.[3] Upon remand, the Commission granted appellee benefits.

This timely appeal followed.

In appeals involving claims for workers' compensation, we view the evidence in the

light most favorable to the Commission's decision and affirm the decision if it is supported by

substantial evidence.[4] Substantial evidence is relevant evidence that a reasonable mind might

accept as adequate to support a conclusion.[5] The issue is not whether we might have reached

a different result than the Commission, but whether reasonable minds could reach the

Commission's decision.[6] Additionally, questions concerning the credibility of witnesses and

the weight to be given to their testimony are within the Commission's exclusive province.[7]

For their first point, appellants argue that the issue of the Form AR–N was improperly

raised in the prior appeal. This point is barred by the law-of-the-case doctrine. The

law-of-the-case doctrine prohibits a court from reconsidering issues of law and fact that have

already been decided on appeal.[8] The doctrine provides that a decision of an appellate court

---

[2]*Delargy*, 2014 Ark. App. 499, 442 S.W.3d 889.

[3]*Id.*

[4]*Moss v. Rogers Logging Co.*, 2014 Ark. App. 277.

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Carter v. Cline*, 2013 Ark. App. 398, 430 S.W.3d 22.

establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review.[9] The doctrine serves to effectuate efficiency and finality in the judicial process, and its purpose is to maintain consistency and avoid reconsideration of matters once decided during the course of a single, continuing lawsuit.[10] The law-of-the-case doctrine requires us to adhere to our decision on the first appeal, whether it was right or wrong.[11]

Next, appellants contend that the evidence was insufficient to support the Commission's award of benefits.[12] More specifically, appellants argue that the evidence was insufficient to support the Commission's finding that appellee's treatment by Dr. Peek was reasonable and necessary. They further contend that because the treatment was not reasonable and necessary, the Commission's grant of TTD, permanent impairment, and wage loss to appellee is not supported by the evidence.

Arkansas Code Annotated section 11-9-508(a)[13] requires an employer to promptly provide an injured worker medical treatment "as may be reasonably necessary in connection with the injury received by the employee." The employee must prove by a preponderance

---

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]Most of this argument centers on the Commission's first decision as well as the opinion of the ALJ. However, it is well settled that the ALJ's findings are irrelevant for purposes of appeal, as this court is required by precedent to review only the findings of the Commission and ignore those of the ALJ. *See Freeman v. Con-Agra Frozen Foods*, 344 Ark. 296, 40 S.W.3d 760 (2001).

[13](Repl. 2012).

SLIP OPINION

of the evidence that medical treatment is reasonable and necessary.[14] What constitutes reasonably necessary treatment is a question of fact the Commission decides.[15] Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment.[16]

Here, appellee sought medical treatment on her own when appellants discontinued payments. As a result of that treatment, she underwent two surgeries in an attempt to alleviate pain associated with her compensable spine injury. She testified that following her first surgery, she could control the pain better; however, she stated that the pain got progressively worse between the two surgeries. She stated that her pain declined "quite a bit" after the second surgery. She admitted that she was not pain-free, but stated that she was able to "control [it] a lot better" and that it had "leveled off." Appellee stated that she had not returned to work since her second surgery and acknowledged that she was currently seeking medical disability. The Commission found that appellee's post-surgical improvement was evidence that the surgeries were reasonable and necessary. Substantial evidence supports the Commission's finding.

When an injured employee is totally incapacitated from earning wages and remains within her healing period, she is entitled to temporary-total disability.[17] The healing period

---

[14]*Nabholz Constr. Corp. v. White*, 2015 Ark. App. 102.

[15]*Id.*

[16]*Id.*

[17]*Riggs v. B & S Contractors, Inc.*, 2010 Ark. App. 554, 377 S.W.3d 466.

SLIP OPINION

continues until the employee is as far restored as the permanent character of her injury will permit; and it ends when the underlying condition causing the disability has become stable, and nothing in the way of treatment will improve that condition.[18] The determination of when the healing period has ended is a factual determination for the Commission.[19]

Appellee remained off work until August 1, 2011, following her first surgery. She worked until January 31, 2012, when she again left due to pain associated with her injury. On March 9, 2012, Dr. Peek opined that appellee was disabled from employment. Appellee's second surgery took place on April 10, 2012, and the parties stipulated that she did not reach MMI until February 12, 2013. The evidence supports the Commission's finding that appellee was entitled to TTD from May 11, 2011 until August 1, 2011, and from March 9, 2012 to February 12, 2013.

Permanent impairment is any permanent functional or anatomical loss remaining after the healing period has ended.[20] Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings.[21] The Commission may rely on the ratings assigned by a physician, or it may assess its own impairment rating.[22]

Dr. Peek assigned appellee an impairment rating of 25 percent. The Commission

---

[18] *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996).

[19] *Id.*

[20] *Thompson v. Mountain Home Good Samaritan Village*, 2014 Ark. App. 493, 442 S.W.3d 873.

[21] *Id.*

[22] *Id.*

SLIP OPINION

rejected Dr. Peek's rating and assessed its own rating using the American Medical Association Guides. The Commission found that appellee's two back surgeries entitled her to a 14 percent impairment rating. Substantial evidence supports this finding.

Pursuant to Arkansas Code Annotated § 11-9-522(b)(1),[23] when a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors.[24] The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood.[25] The Commission is charged with the duty of determining disability based upon a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience.[26] Motivation, post-injury income, credibility, demeanor, and a multitude of other factors are matters to be considered in claims for wage-loss-disability benefits in excess of permanent-physical impairment.[27]

The Commission found that based on appellee's "relatively young age of 39, her experience in the health care field, and her lack of interest in returning to employment within her restrictions," she was entitled to 25 percent wage-loss disability. This finding is supported by substantial evidence. Accordingly, we affirm.

---

[23](Repl. 2012).

[24]*Redd v. Blytheville Sch. Dist. No. 5*, 2014 Ark. App. 575, 446 S.W.3d 643.

[25]*Lee v. Alcoa Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005).

[26]*Redd*, *supar.*

[27]*Id.*

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Michael E. Ryburn*, for appellant.

*Orr Willhite, PLC*, by: *M. Scott Willhite*, for appellee.