2011 Ark. App. 634

**Rafael SANTILLAN, Appellant**

v.

**TYSON SALES & DISTRIBUTION and Tynet, Inc., Appellees.**

**No. CA 11–515.**

Court of Appeals of Arkansas.

Oct. 26, 2011.

Evelyn Elizabeth Brooks, Fayetteville, for appellant.

Rebecca D. Hattabaugh and Emma Diane Graham, Fort Smith, for appellee.

RITA W. GRUBER, Judge.

Rafael Santillan appeals a decision of the Workers' Compensation Commission that denied his claim for additional benefits related to a compensable back injury. He had various jobs at Tyson over a continuous fifteen-year period and was an "order selector" for the last eight years, driving a forklift and stacking and counting boxes that weighed fifty to sixty pounds. The injury occurred on July 20, 2007, when he was stacking a pallet and a load of boxes fell on him. He contends that substantial evidence does not support the Commission's finding that he is not entitled to additional medical treatment in the form of pain management. We affirm.

Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires the employer of an injured employee to promptly provide such medical and surgical treatment "as may be reasonably necessary in connection with the injury received by the employee." The employee may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury. *Patchell v. Wal–Mart Stores, Inc.*, 86 Ark.App. 230, 184 S.W.3d 31 (2004).

Santillan was seen several times by company doctor Cathleen Vandergriff, who treated him with a steroid injection, physical-therapy orders, and a thirty-day prescription for Celebrex. Her office notes reflect that in August 2007 Santillan reported decreased pain with exercises and the injection, and that in November 2007, despite some relief from the Celebrex, he reported constant back pain, morning stiffness and numbness in his back.[1] After having a lumbar MRI, Santillan was referred to neurosurgeon Dr. Michael Stan-

---

1. An interpreter's presence was noted in most of the medical records, but on at least one occasion the interpreter's absence was noted.

defer for evaluation; to Dr. Jared Ennis, who ordered more physical therapy, administered lumbar epidural pain injections, and administered a bilateral facet nerve block at L5–S1; and finally to orthopedic surgeon Dr. James Blankenship, who in February 2009 performed bilateral pedicular fixation for L5–S1 disc herniation and in May 2009 performed two more surgical procedures for an infection that developed at the location of the right pedicle screw.

Dr. Blankenship's office notes of June 2009 show that Santillan was taking Hydrocodone and Cipro, and Dr. Blankenship added Lyrica to "settle down . . . myofascial leg pain." Dr. Blankenship wrote in July 2009 office notes that Santillan reported continuing pain; Santillan said a bone stimulator he had received five months earlier was not working; the stimulator worked correctly in the office; he had been coached on using it frequently; solid arthrodesis appeared to be developing without its use; and he had been "extremely noncompliant" about using it.

In August 2009 Dr. Blankenship reviewed a recent functional capacity evaluation (FCE) in which Santillan ranked himself in the crippled range and exhibited low effort. Dr. Blankenship viewed this as an expected outcome and wrote that Santillan's poor input and psycho-dynamics were "not uncommon in someone who has had chronic pain of this nature, especially with postoperative complications with infections and multiple surgeries to have an inappropriate illness behavior secondary to fear avoidance." Noting past attempts to assure Santillan that his back had become stable and he could do more than he perceived, Dr. Blankenship scheduled two more weeks of "active increasing therapy" and released him to work within restrictions set out in the FCE.

An October 2009 note from Dr. Blankenship's clinic states that Santillan had a flare-up of increased back pain and left-buttock pain, the incision was well healed with no sign of infection, Santillan reported faithfully walking but not stretching, and he was instructed on the importance of stretching. At an office visit the following week, Dr. Blankenship noted that Santillan had been working twenty-hour weeks and reported complete exhaustion from exercise and work along with myofascial pain radiating into the groin away from L5 or S1 nerve distribution. Regarding the original surgery and postoperative infection, Dr. Blankenship wrote that Santillan had reached maximum medical improvement and assessed a twelve-percent impairment to the body as a whole.

Dr. Blankenship delayed a final work release pending results of further x-rays and another FCE, which took place in November 2009. The evaluator noted a general match between Santillan's "subjective reports of pain/limitation" and "distraction-based clinical observations," with minor overall inconsistencies. Dr. Blankenship released Santillan to work in December 2009 at the FCE's recommended "light physical demands level."

At a one-year postoperative office visit on February 18, 2010, Dr. Blankenship noted that Santillan complained of bilateral anterior thigh pain and significant lower back pain "when he does anything," and said he was doing his exercises three times a week rather than the recommended five days. Dr. Blankenship reported that physical examination revealed myofascial tightening and quad tightness, that Santillan said some of his myofascial symptoms were improving, that Dr. Blankenship told him his symptoms should improve with more activity and stretching, and that Dr. Blankenship thought Santillan's reported incontinence and decreased sexual function might be medication-related but "most likely" had to do with "his depression and his chronic pain." Dr. Blankenship scheduled no follow-up appointment but recom-

mended a lumbar MRI to see if anything else could be done.

In a letter of March 11, 2010, Dr. Blankenship reaffirmed that Santillan had achieved maximum medical improvement with an impairment rating of twelve percent. Dr. Blankenship noted that a March 9, 2010 MRI showed good decompression of the neural structures but L4–5 disc-space changes; that another doctor who read the MRI thought the process was degenerative rather than infectious; and that, because of the degenerative-disc reading, Dr. Blankenship did not feel it had anything to do with the work-related injury. He concluded:

Unfortunately, I do think we are looking at a failed back syndrome with post-laminectomy syndrome. I do not feel that any further treatment is going to afford him any significant benefit, at least from the standpoint of neurosurgical intervention and evaluation. From that standpoint, I feel like he is at MMI for the treatment of his current back problems.... In summary, I do feel that the gentleman is at MMI, and no further surgical evaluation or treatment would be warranted at present.

In May 2010 Dr. Blankenship released Santillan to a forty-hour work week with permanent restrictions of lifting no more than twenty-three pounds, sitting or standing in twenty-to-thirty minute periods, twelve-inch to overhead lifting, pushing and pulling no more than forty pounds, and rarely sitting or crouching.

At the hearing before the administrative law judge, Santillan testified that his symptoms and pain had not changed much since he saw Dr. Blankenship in February 2009. Santillan said his pain sometimes worsened and was really strong, and some days he could not even wash dishes. He stated, "The last time I saw Dr. Blankenship he gave me a lot of prescriptions for pain. I am also seeing my family doctor

for pain." He said he was no longer working because Tyson would not consider him for light duty after his year of probation.

The administrative law judge found that Santillan failed to meet his burden of proving entitlement to additional medical treatment in the form of pain management. She found that Santillan's testimony of being given pain medications at his last visit with Dr. Blankenship and seeing his family physician for complaints of lumbar pain was contradicted by Dr. Blankenship's report and the absence of any family physician's records. She noted that Santillan complained at the last visit of significant lower back pain, but Dr. Blankenship "did not recommend any additional medical treatment at that time," informed Santillan that stretching and becoming more active would improve his myofascial symptoms, and scheduled no follow-up evaluation. Reviewing Dr. Blankenship's letter of March 11, 2010, the law judge wrote:

[I]t is the opinion of Dr. Blankenship, claimant's primary treating physician, that claimant is not in need of any additional medical treatment for his compensable injury. Claimant admitted that his current complaints are the same complaints he had at the time of his last visit with Dr. Blankenship on February 18, 2010. Despite those complaints, Dr. Blankenship did not recommend any additional medical treatment, but to the contrary indicated that no additional treatment would be warranted.

Finding Dr. Blankenship's opinion credible and entitled to great weight, the law judge concluded that Santillan had not proved he was entitled to additional medical treatment in the form of pain management. The Commission affirmed and adopted her opinion.

Santillan contends on appeal that the Commission unreasonably denied pain management as additional medical treatment to a man with no back problems

prior to his work injury. He argues that, in light of his surgeries and failed-back syndrome, the Commission unreasonably denied at least an evaluation for pain management. The claimant bears the burden of proving entitlement to additional medical treatment. *Patchell v. Wal–Mart Stores, Inc.*, 86 Ark.App. 230, 184 S.W.3d 31 (2004). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark.App. 248, 205 S.W.3d 181 (2005). In order to reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have arrived at the conclusion reached by the Commission. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

Here, the primary basis of the Commission's decision was neurosurgeon Dr. Blankenship's written opinion after seeing Santillan in the final visit. The Commission denied Santillan's claim for additional medical treatment in the form of pain management, stating that "Dr. Blankenship did not recommend any additional medical treatment." Evidence supporting this finding was Dr. Blankenship's final release to work, no recommended follow-up care, and the contradiction between the medical records and Santillan's testimony that his doctors recently treated his pain with prescriptions. Thus, fair-minded persons, with the same facts before them, could have arrived at the conclusion reached by the Commission.

Affirmed.

HART and BROWN, JJ., agree.