SLIP OPINION

Cite as 2016 Ark. App. 479

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-391

| | |
|---|---|
| LETECIA BENNETT<br><br>APPELLANT<br><br>V.<br><br>TYSON POULTRY, INC.<br><br>APPELLEE | **Opinion Delivered:** October 19, 2016<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NOS. G302528, G302529 & G407436]<br><br>AFFIRMED IN PART;<br>REVERSED AND REMANDED IN PART |

## RITA W. GRUBER, Judge

This workers' compensation case involves several claims filed by Letecia Bennett, a 27-year employee of Tyson Poultry, Inc., after she sustained a May 2012 compensable injury in the form of bilateral carpal-tunnel syndrome. Her work history at Tyson included some 16 years deboning chickens; then 5 years on the "tote wash," where she and a coworker placed tubs in a washing machine and removed them—alternating these tasks with one another each hour; and finally, before she underwent a right-wrist surgery for the compensable carpal-tunnel syndrome, a job in housekeeping. In March 2013, she sustained a compensable injury to her right shoulder; later the same month, she underwent left-wrist surgery for the compensable carpal-tunnel syndrome. The wrist surgeries, performed by Dr. Lawrence D. Dodd, were unsuccessful.

Ms. Bennett received a change of physicians to Dr. James Kelly, who ordered nerve-

conduction studies. In September 2013, he noted that the studies still showed bilateral carpal-tunnel syndrome and he recommended "a redo." Dr. Kelly planned to perform the right carpal-tunnel release first and the left release six to eight weeks later. He did perform the repeat right carpal-tunnel release in October 2013, but the repeat left carpal-tunnel release was never done. In September 2014, Ms. Bennett filed a claim for a gradual-onset injury of April 1, 2014, in the form of a right-wrist ganglion cyst and tendinitis due to rapid and repetitive motion. Tyson denied the claim, and she used her own insurance to undergo surgery and treatment by Dr. Kelly for the cyst and tendinitis.

In July 2015, an administrative law judge conducted a hearing on controverted issues in this case. He found that Ms. Bennett failed to prove (1) entitlement to additional medical treatment for the compensable bilateral carpal-tunnel syndrome and right-shoulder injury; (2) compensability of the ganglion cyst and bilateral tendinitis; and (3) entitlement to a 12-percent permanent-impairment rating that Dr. Kelly had assigned. The Arkansas Workers' Compensation Commission affirmed and adopted the law judge's opinion. Ms. Bennett raises three points on appeal, challenging the Commission's findings that she failed to meet her burden of proof on the three issues. We reverse the denial of her claim for additional medical treatment for the compensable bilateral carpal-tunnel syndrome, and we remand to the Commission on this issue. In all other aspects, we affirm.

The Commission shall determine whether the party having the burden of proof on any issue has established it by a preponderance of evidence. Ark. Code Ann. § 11-9-705(a)(3) (Repl. 2012). We review the evidence in the light most favorable to the Commission's

SLIP OPINION

findings and will affirm if those findings are supported by substantial evidence. *Jordan v. Home Depot, Inc.*, 2013 Ark. App. 572, 430 S.W.3d 136. When the Commission denies benefits because the claimant has failed to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Id.*

In order to reverse a decision of the Commission, we must be convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Santillan v. Tyson Sales & Distrib.*, 2011 Ark. App. 634, at 6, 386 S.W.3d 566, 570. The issue on review is not whether the evidence would have supported a contrary finding or whether we might have reached a different result; we affirm if reasonable minds could reach the Commission's conclusion. *Thompson v. Mountain Home Good Samaritan Vill.*, 2014 Ark. App. 493, 442 S.W.3d 873. We defer to the Commission's findings of credibility and the resolution of conflicting evidence. *Get Rid of It Ark. v. Graham*, 2016 Ark. App. 88, at 10.

## I. *Additional Medical Treatment*

In her first point on appeal, Ms. Bennett challenges the Commission's finding that she did not prove entitlement to additional medical treatment for the compensable bilateral carpal-tunnel syndrome or compensable right-shoulder injury. The employer shall promptly provide for an injured employee such medical services as may be reasonably necessary in connection with the employee's injury. Ark. Code Ann. § 11-9-508(a) (Repl. 2012). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has

SLIP OPINION

the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005).

We now address the denial of Ms. Bennett's claim for additional medical treatment for her compensable bilateral carpal–tunnel syndrome. The Commission's opinion included the following discussion of medical treatment she received from Dr. Kelly after October 2013, when he performed the "redo" release on the right wrist:

> Medical records from Dr. Kelly do indicate that further treatment on the claimant's left wrist was contemplated; however, these reports were before the surgery on claimant's right wrist for the tendinitis and before claimant's complaints changed. Dr. Kelly performed surgery for claimant's tendinitis on September 30, 2014. By the time of claimant's first follow-up visit after this surgery with Dr. Kelly on October 17, 2014, Dr. Kelly noted that claimant was not complaining about pain in her wrists, but rather about numbness down her shoulders and into both arms. As a result, *Dr. Kelly ordered an MRI scan of the claimant's cervical spine which* according to his report of November 12, 2014, *revealed nothing that would relate to the problems of which she was complaining. Given the MRI findings, Dr. Kelly stated: "In light of this, there is absolutely nothing I think I can do for her any further."* Dr. Kelly then went on to state that he was going to find that claimant had reached maximum medical improvement and he ordered the functional capacities evaluation upon which he subsequently based claimant's work restrictions.

(Emphasis added.) The Commission assigned great weight to Dr. Kelly's opinion, noting his statement that there was "nothing" else he could do for Ms. Bennett. On this basis, the Commission denied her claim for additional medical treatment for the compensable bilateral carpal–tunnel syndrome.

Ms. Bennett asserts that the repeat carpal–tunnel release on the left wrist, which Dr. Kelly had planned, was never performed because of his focus on her right–wrist symptoms. She points out that Dr. Kelly never stated that her left carpal–tunnel-syndrome symptoms or

left wrist-and-hand symptoms were resolved and that, after the second nerve-conduction tests, she was not declared at maximum medical improvement (MMI) for left carpal-tunnel syndrome. She argues that she remains in need of surgery for her left carpal-tunnel syndrome—which was based on objective testing and clinical examination, has been symptomatic, and has not been treated. Her arguments are well taken.

There is no dispute that the carpal-tunnel injury to both wrists was compensable, that the first surgery was not successful for either wrist, that Dr. Kelly planned to "redo" both the right and the left surgical releases, and that the left "redo" was never performed. We find that reasonable minds could not view Dr. Kelly's opinion that there was "nothing" more he could do—an opinion that he rendered after Ms. Bennett had undergone surgery for tendinitis and had an MRI of her cervical spine—as resolving the need for the second surgery for left-wrist carpal-tunnel syndrome. We find the dissenting Commissioner's discussion of medical records to be relevant to this issue:

> On August 12, 2013, Dr. Kelly evaluated the claimant for continued symptoms, numbness, pain, tingling, weakness in her hands. She had severe pain at the base of her wrist, with some intermittent numbness. Her pain interfered with her ability to work. Her numbness was less than before surgery, but her pain was worse. She had positive clinical tests for carpal tunnel syndrome. He planned repeat electromyography and nerve conduction studies, to determine if there was a solution. The studies were abnormal, showing bilateral mild median neuropathy at the wrists, minimally worse on the left. On September 25, 2013, Dr. Kelly stated that the testing showed bilateral carpal tunnel syndrome, which was consistent with her complaints and her positive Tinel's, Phalen's and compression tests. *He felt that repeat releases were in order and that the claimant's first surgeries were actually in the Guyon canal and not in the carpal tunnel at all*, based upon her incisions and her symptoms. *They would start with the right hand.*
>
> . . . .
>
> The right carpal tunnel release was performed on October 10, 2013, and she

5

was released to one-handed duty on October 14, 2013.

On November 18, 2013, Dr. Kelly noted that the claimant's right-hand numbness and pain, other than some expected pillar pain, had resolved. Dr. Kelly noted the claimant's right shoulder pain, radiating into her forearm.[1] This was not related to her carpal tunnel syndrome.

. . . .

On August 15, 2014, Dr. Kelly explained that the claimant was released from his care for her carpal tunnel syndrome in November 2013, and that she returned to him with new symptoms in the spring of 2014 which could have been related to the carpal tunnel release. Her symptoms were not related to her carpal tunnel syndrome or release under workers' compensation insurance, and he was treating her for extensor carpi ulnaris tendinitis under the claimant's private insurance. In regard to her carpal tunnel syndrome, she could return to work without restriction, but in regard to her tendinitis, she had light duty restrictions.

. . . .

On August 29, 2014, Dr. Kelly wrote:

*. . . [S]he still requires the carpal tunnel. We have not pursued this just because we are trying to get her right hand feeling better,* but again the right carpal tunnel [sic]can be done at any point in time as there is no restriction to this and as far as I know this was considered part of her original referral.

(Emphasis added; footnote omitted.)

Based on Dr. Kelly's statement that he could do nothing more for Ms. Bennett's complaints "about numbness down into her shoulders into both arms"—after the MRI had failed to show anything related to that complaint—the Commission found that she had failed to prove entitlement to additional medical treatment for bilateral carpal-tunnel syndrome. However, there was no evidence that the left carpal-tunnel syndrome had resolved, that the

[1]Dr. Kelly noted that Ms. Bennett had previously reported right-shoulder symptoms to the company nurse.

healing period for this injury had ended, or that MMI had been declared regarding it. We find that reasonable minds could not come to the conclusion that further medical treatment for carpal-tunnel syndrome of the left wrist was not reasonable and necessary, and we reverse the denial of her claim on this issue.

Regarding Ms. Bennett's claim for additional medical treatment related to the compensable shoulder injury, the Commission accepted the parties' stipulation that on April 4, 2014, Dr. Charles Pearce said that Ms. Bennett "was at MMI, did not need further treatment or testing for her shoulder, and had 0% permanent partial impairment." The Commission then reviewed the following medical records. By April 4, 2014, Dr. Pearce noted that the shoulder pain had essentially resolved and he had released Ms. Bennett to return to work at regular duties with respect to her shoulder. In a September 2014 follow-up visit after Ms. Bennett's right-wrist tendinitis surgery, Dr. Kelly ordered an MRI of the cervical spine for complaints of numbness from her shoulders into both arms. On November 12, 2014, Dr. Kelly stated that the MRI "revealed nothing . . . related to [her] complaints" and that he would rate her at MMI and order a functional capacities evaluation (FCE). After the December 2014 FCE, Dr. Kelly assigned permanent restrictions that allowed her to perform light-duty work with limitations on lifting.

The Commission found that Ms. Bennett's later shoulder complaints were not related to her original compensable injury, citing both Dr. Pearce's "opinion that her shoulder pain had resolved and that no further diagnostic testing or treatment was needed" and Dr. Kelly's November 2014 statement that the cervical-spine MRI "revealed nothing that would relate

SLIP OPINION

to claimant's shoulder complaints." We conclude that the Commission's opinion displays a substantial basis for denying the claim for additional medical treatment related to the compensable right-shoulder injury. We affirm on this issue.

## II. *Compensability of the Ganglion Cyst and Bilateral Tendinitis*

Ms. Bennett contends that the Commission erred in denying her claim that her right-wrist ganglion cyst and bilateral tendinitis constituted a compensable injury. She points to Dr. Kelly's opinion that her work activities had caused both the cyst and the tendinitis.

Ms. Bennett argues that the cyst and tendinitis were part of her continuum of symptoms resulting from many years of rapid repetitive work in her employment. She argues that her complaints of pain, numbness, and tingling—before she was placed on light duty—were never resolved and that the variety of her duties did not disprove the relationship between her regular work duties and the cyst and tendinitis. She asserts that tendinitis such as hers is caused by injury to the extensor carpi ulnaris (ECU) tendon; that she had such an injury—commonly caused by unusual use, overuse, increased activity, or changed activity of the wrist, hand, or forearm, and repetitive motion of the hand and wrist; and that the risk of developing ganglion cysts increases with previously injured joints or tendons. She notes Dr. Kelly's statement in August 2014 that the ECU tendinitis was caused by repetitive extension and flexion of her wrist in her work activities.

The Commission stated that, regardless of Dr. Kelly's opinion, it remained Ms. Bennett's burden to prove that her job duties required her to engage in rapid repetitive motion. *See Malone v. Texarkana Pub. Schs.*, 333 Ark. 343, 350, 969 S.W.2d 644, 647 (1998)

(devising a two-part test to determine whether an injury is caused by rapid and repetitive motion: (1) the tasks must be repetitive and (2) the repetitive motion must be rapid). Adopting the law judge's opinion, the Commission discussed the evidence as follows:

> [C]laimant filed a claim alleging a gradual onset injury on or about April 1, 2014. By this period of time the claimant had been performing work in the respondent's housekeeping department in which she swept, mopped, scrubbed, and took out trash. I do not find that these job duties required claimant to engage in rapid repetitive motion. Likewise, even if claimant's job working on the tote wash were to be considered, I do not find that those job activities required rapid repetitive motion. Claimant testified on direct examination that she was not sure how many totes they washed every minute or even every hour. Claimant admitted that it was the machine itself which washes the tub with her and the other employee only responsible for placing the tubs in the machine or removing them from the machine. According to claimant's testimony she performed this job for approximately five years. Based on claimant's testimony and the remaining evidence presented, I do not find that her job duties on the tote wash required rapid repetitive motion.

Ms. Bennett's arguments regarding the cause of her ganglion cyst and tendinitis simply go to the weight of the evidence, a matter that the Commission decided against her. We hold that the Commission's decision displays a substantial basis for the denial of her claim that the cyst and tendinitis constituted a compensable injury.[2]

### III. *Permanent-Impairment Rating*

As her final point, Ms. Bennett seeks reversal of the Commission's finding that she was not entitled to permanent partial-disability benefits based on Dr. Kelly's assignment of a 12-percent rating to her upper extremity. She notes that the impairment rating was "based on

---

[2]Ms. Bennett also argues that she is entitled to benefits for temporary total-disability after her tendinitis surgery, beginning in September 2014 when Dr. Kelly took her off work and ending when he released her to return to work in January 2015. Because the tendinitis is not a compensable injury, she is not entitled to related disability benefits.

4th edition AMA guidelines,"[3] and she points to her diagnosis of right-wrist ECU tendinitis with surgery.

The Commission, noting Dr. Kelly's statement in a letter report that Ms. Bennett "underwent MMI rating . . . for a right wrist ECU tenosynovitis," concluded that the 12-percent rating he assigned was "clearly for the tendinitis"—which the Commission found to be a noncompensable injury. Thus, the Commission denied Ms. Bennett's claim for permanent partial-disability benefits based on this impairment rating. We find that the Commission's decision displays a substantial basis for the denial of the claim.

Affirmed in part; reversed and remanded in part.

WHITEAKER and HOOFMAN, JJ., agree.

*Michael Hamby, P.A.*, by: *Michael Hamby*, for appellant.

*Ledbetter, Cogbill, Arnold & Harrison, LLP*, by: *E. Diane Graham* and *Joseph Karl Luebke*, for appellee.

---

[3]American Medical Association