SLIP OPINION



Cite as 2017 Ark. App. 309

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–1093

| | |
|---|---|
| LEROY DORN, JR.<br>APPELLANT | **Opinion Delivered:** May 17, 2017 |
| V. | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G503709] |
| HOUSING AUTHORITY CITY OF PINE BLUFF AND AIG CLAIMS, INC.<br>APPELLEES | REVERSED AND REMANDED |

## RITA W. GRUBER, Chief Judge

This workers' compensation claim stems from an altercation on May 5, 2016, between Leroy Dorn Jr., a maintenance worker for Housing Authority of Pine Bluff, and his coworker Bruce Spicer. The altercation occurred in their employer's parking lot in front of the maintenance building on the morning of a supervisor-called meeting with Dorn and Spicer regarding an incident between them the previous day. Dorn's injuries from the May 5 altercation included tooth avulsion, contusion of the left elbow, and fractures to the left orbital bones, left maxillary sinus, and right maxillary sinus. He appeals the determination of the Arkansas Workers' Compensation Commission that his injuries were not statutorily compensable. We hold that the injuries were compensable, and we reverse.

The May 5 altercation occurred in the presence of a Pine Bluff police officer, Chrisanthia Kendrick, who was in the parking lot for unrelated reasons. She tried to intervene when she saw Spicer striking Dorn in the head, face, body, and shoulder with a baseball bat. She repeatedly yelled for Spicer to stop, but he did not obey until she sparked

SLIP OPINION

her taser at him. She arrested Spicer for battery. Several days later, the Housing Authority terminated both Dorn and Spicer from employment for workplace violence.

The Housing Authority controverted Dorn's claim for medical expenses and temporary total-disability benefits. It contended that the altercation resulted from personal animosity and was not work related. It relied in part on Spicer's claim of the previous day that Dorn, whose job included cleaning apartments, pulled a knife on him after accusing him of stealing Dorn's cleaning supplies and personal things at the workplace.

The case was heard by an administrative law judge, who found in her written opinion that Dorn's injuries were "due to a work-related argument over missing cleaning supplies and personal items from the work site, while [Dorn] was attending an employer-mandated meeting." She concluded that Dorn had proved entitlement to payment of medical expenses and to temporary total-disability benefits from May 6, 2015, to July 29, 2015. Both parties appealed to the Commission, with the Housing Authority claiming that Dorn's injuries were not compensable and Dorn contending that he was entitled to temporary total-disability benefits beyond July 29. The Commission reversed the law judge's decision, finding that Dorn had not proved the compensability of his injuries.

For purposes of this case, "compensable injury" is defined as an "accidental injury causing internal or external physical harm to the body . . . , arising out of and in the course of employment and which requires medical services or results in disability or death." Ark. Code Ann. § 11-9-102(4)(A) (Repl. 2012). Specifically excluded from the definition of "compensable injury" is "[i]njury of any active participant in assaults or combats which,

although they may occur in the workplace, are the result of nonemployment-related hostility or animus of one, both, or all of the combatants and which assault or combat amounts to a deviation from customary duties," or injury that was "inflicted upon the employee at a time when employment services were not being performed . . . ." Ark. Code Ann. § 11-9-102(4)(B)(i), (iii).

Here, the Commission found that Dorn was an "active participant" in an assault resulting from his "personal animus for Spicer," which "had been building for some time prior to culminating into the altercation of May 5, 2015." It also found that Dorn was not conducting employment services at the time of the altercation. Thus, it concluded that Dorn had not overcome the elements of the statute.

Dorn raises two points on appeal. First, he challenges the Commission's finding that his injuries were not compensable pursuant to section 11-9-102(4)(B). Second, he asserts that he is still unable to work and is entitled to temporary total-disability benefits beyond July 29, 2015—the date that his neurologist released him back to work.

In order to reverse a decision of the Commission, we must be convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Santillan v. Tyson Sales & Distrib.*, 2011 Ark. App. 634, at 6, 386 S.W.3d 566, 570. We will affirm if reasonable minds could reach the Commission's conclusion. *Thompson v. Mtn. Home Good Samaritan Vill.*, 2014 Ark. App. 493, 442 S.W.3d 873. We defer to the Commission's findings of credibility and the resolution of conflicting evidence. *Get Rid of It Ark. v. Graham*, 2016 Ark. App. 88, at 10. We review the evidence

in the light most favorable to the findings of the Commission and will affirm if the findings are supported by substantial evidence. *Bennett v. Tyson Poultry, Inc.*, 2016 Ark. App. 479, at 2–3, 504 S.W.3d 653, 656.

I. *Whether Substantial Evidence Supports the Commission's Determinations That Dorn's Injuries Were Barred Under Statutory Provisions Governing Workplace Assaults*

In his first point on appeal, Dorn challenges the Commission's findings that he was an active participant in the workplace assault, that the assault resulted from non-employment-related hostility, that the assault amounted to a deviation from his customary duties, and that he was not conducting employment services at the time of the assault. *See* Ark. Code Ann. § 11–9–102(4)(B)(i). His arguments are well taken.

The evidence before the Commission included testimony given at the hearing by Dorn, employee Robert Terry, and Dorn's supervisor, Bobby Turner, and written statements of other employees regarding Dorn and Spicer's previous argument about missing cleaning supplies and personal belongings. The documentary evidence included a May 4 police report recounting Spicer's statement that Dorn "got angry" and "pulled a knife out of his pocket but did not use it" in the disturbance that "started over cleaning supplies missing from apartments"; a police report detailing the May 5 parking lot assault; a probable-cause affidavit for Spicer's arrest on second-degree battery; and Spicer's and Dorn's letters of termination.

The Commission recounted Dorn's statements that items allegedly missing from the apartment unit where he was working were personal items left behind by former tenants as well as his own cleaning supplies, and employees' statements that Dorn "had made his mind up prior to May 4 . . . that Spicer was stealing his things." The Commission found that

4

Supervisor Turner had credibly testified that Spicer had come to him on May 4 with reports

of Dorn's threatening behavior the same day, which included brandishing a knife, and that

"these threats . . . reportedly upset Spicer so badly that Turner felt compelled to send him

home for the rest of the day."  The Commission noted that on May 4, Spicer had reported

the incident to police.  The Commission wrote:

> *Without implying that Spicer was justified in hitting the claimant numerous times with a bat on the morning of May 5, 2015, the claimant's reported behavior towards Spicer the previous day strongly suggests that the claimant—not Spicer—was the actual protagonist* in this situation. The record, in fact, demonstrates that the claimant believed someone—namely Spicer—had been stealing his personal things and that he was determined to do something about it, even if that meant taking matters into his own hands. *And, while there seems, at least by the claimant's testimony, to be much consternation concerning why Spicer would take a small bat to him in an unprovoked attack on the morning of May 5, 2015, this much is clear* in this claim: *following a long-held suspicion, but lacking proof thereof, that Spicer had taken his personal belongings, on May 4, 2015, the claimant confronted Spicer with his presupposition that Spicer was the guilty party—even threatening bodily harm. This, in turn, led to the altercation of May 5, 2015,* which is the subject of this claim. We note that this conclusion is supported by the fact that the claimant boasted to co-workers of his potential to commit unconscionable acts of revenge—even going as far as to express his intentions to physically harm Spicer for presumably stealing his things.

> In sum, the preponderance of the evidence in this claim shows that (1) there was pre-existing animosity between the claimant and Spicer concerning personal items that Spicer allegedly stole from the claimant, (2) these missing items were identified as personal to the claimant both by his testimony and by documents contained within the record, (3) by allegedly eliminating other co-workers, the claimant summarily concluded that Spicer took these missing items, and (4) on May 4, 2015, the claimant confronted Spicer with his suspicions, words were exchanged, and the claimant allegedly threatened Spicer with a knife.

> Furthermore, although the actual events on the morning of May 5, 2015, leading up to the altercation are questionable in that only the claimant testified in this regard and the uncorroborated testimony of an interested party is always considered to be controverted, *see, Burnett v. Philadelphia Life Ins. Co.*, 81 Ark. App. 300, 101 S.W.3d 843 (2003), the record clearly establishes that *the claimant boasted to co-workers about his injurious intentions towards Spicer, and* that *Spicer was, in fact, fearful of the*

*claimant's touted retribution.* This is supported, in part, by credible testimony that Spicer promptly reported the incident of May 4, 2015 to his supervisors, and he followed up by making a police report wherein he asserted that the claimant pulled a knife on him.

(Emphasis added.)

On this evidence, the Commission found that Dorn was not "just an innocent victim, who, upon confronting a bully and thief was badly beaten at first opportunity." It found that the growing animosity between Dorn and Spicer, based on Dorn's uncorroborated conclusion that Spicer had stolen some of his personal belongings, "had culminated in, at the very least, a verbal altercation the day before." It concluded that the physical altercation on the employer's parking lot was clearly a result of non–employment–related hostility or animus of one or both of the combatants and that it amounted to a deviation from customary duties.

First and foremost, we hold that substantial evidence does not support the Commission's finding that Dorn was an active participant in the workplace assault. Even accepting the Commission's findings that Dorn unjustly accused Spicer and threatened him with bodily harm, which are findings that turned on the Commission's determination of credibility, we hold that there was no substantial evidence of Dorn's active participation in the May 5 physical assault when Spicer repeatedly struck him with a baseball bat.

Evidence about the assault itself was given through Dorn's testimony, coworker Robert Terry's testimony, and the May 5 police report. The Commission acknowledged Dorn's testimony on direct examination that Spicer was "looking out the window of the building" when Dorn pulled into the parking lot and parked in time for the meeting scheduled by Supervisor Turner; that Spicer walked out of the building, opened the door of

a company vehicle, and "just stood there waiting" in the route where Dorn would necessarily walk to enter the building; that Dorn therefore waited approximately ten minutes for someone else to arrive at the facility and voiced his "discomfort with the situation" to employee Sam Purley when he arrived; and that Purley encouraged Dorn to clock in on time.

The Commission further recounted Dorn's testimony:

> According to the claimant, he was approximately twenty (20) feet from the facility when he was "met with a baseball bat" wielded by Spicer. The claimant testified that he did not attempt to return Spicer's blows or to defend himself; rather, he "tried to get away because there was an officer there." The claimant testified that Spicer continued "attacking" him with the bat as he tried to flee. The claimant described the bat as small—approximately two-and-a-half (2½) to three (3) feet long—and made of wood. The claimant stated that he was on the ground when the off-duty police officer intervened and threatened to taze Spicer if he did not stop.

The Commission then discussed Dorn's cross-examination testimony regarding the events leading up to the assault:

> [T]he claimant testified that after the arrival of his co-worker on the morning of May 5, 2015, he walked by Spicer even though "something didn't feel right." Although the claimant could not initially recall having spoken to Spicer as he had admitted in deposition, the claimant later agreed that he spoke with Mr. Spicer on the morning of May 5, 2015, but he could not recall what he said. Further, the claimant could not recall who spoke first. *Despite his initial safety concerns, the claimant stated that he felt "safe within myself" eventually walking past Spicer on the morning of May 5th, 2015, due to the fact that there was an off-duty police officer nearby and he was walking in with a co-worker.* The claimant testified that he walked around the passenger side of Spicer's truck in order to avoid him when Spicer suddenly ran towards him with a bat and began hitting him with it. *The claimant hesitated before answering whether he could have waited for his supervisor to arrive before he entered the building. Eventually, however, the claimant stated that he did not wait because he did not want to clock in late.*

(Emphasis added.)

Next, the Commission discussed the testimony of Robert Terry, who was present at appellee's facility the morning of May 5, 2015, and saw Dorn there. The Commission noted

7

that although Terry corroborated Dorn's testimony with respect to the events of the morning, "Terry did not actually witness the assault" because his "view was blocked when Spicer allegedly hit [Dorn] with a baseball bat." The Commission acknowledged Terry's testimony on cross-examination that all maintenance employees carried clip-on box cutters.

The Commission acknowledged that Officer Chrisanthia Kendrick had witnessed the May 5 altercation, had become involved in it, and had arrested Spicer for battery.[1] The Commission summarized her report as follows:

> Kendrick stated that the claimant asked for her assistance and she turned to see Spicer hitting the claimant in the face with a "stick." Kendrick further stated that the claimant unsuccessfully attempted to flee the situation, and that Spicer did not stop hitting the claimant until she threatened to taze him.
>
> Officer Kendrick stated that she arrested Spicer, who then informed her that the claimant had pulled a knife on him the day before. "Mr. Bruce Spicer stated that Mr. Leroy Dorn confronted him about cleaning supplies and other personal belongings of his," Kendrick stated. Upon speaking with the claimant at the emergency room, he informed Officer Kendrick that "sometime last week on Thursday, his personal belongings went missing out of an apartment unit he was cleaning. Mr. Leroy Dorn stated that he asked other co-workers about his missing personal belongings," Kendrick added, then she continued, "Mr. Dorn stated that he asked Mr. Bruce Spicer on 05-05-2015 [sic] about the items and they started arguing with each other. Mr. Leroy Dorn stated he told his supervisors about the incident and on today they were going to meet."
>
> The claimant further informed Officer Kendrick that he and co-worker, Robert Terry, walked by Spicer's vehicle on the morning of May 5, 2015, and "spoke to him as normal."

We have viewed the evidence above in the light most favorable to the Commission's findings and with deference to the Commission's determination of credibility, the weight to

---

[1]Officer Kendrick did not testify at the hearing, but the parties stipulated to her report of the incident.

be assigned, and the resolution of conflicting evidence. Even if the Commission determined that Dorn pulled a knife on May 4 when he and Spicer argued; that Dorn threatened Spicer with physical harm, as recounted in other employees' written statements and as reported by Spicer to Supervisor Turner on May 4; and that Dorn perhaps spoke inappropriately to Spicer on May 5 and should have waited to enter the building—none of those findings overcome the undisputed evidence that the May 5 assault consisted solely of Spicer's striking Dorn with the baseball bat.

We hold that reasonable minds could not have found that Dorn was an "active participant" in the baseball-bat assault, and we reverse the Commission's finding on this issue. Because Dorn was not an active participant, his claim is not barred. *See* Ark. Code Ann. § 11-9-102(4)(A).

II. *Whether Substantial Evidence Supports the Commission's Finding That Dorn Was Not Conducting Employment Services*

An employee is performing employment services when he or she is doing something that is generally required by his or her employer. *Best W. Inn & Union Ins. of Providence v. Paul*, 2014 Ark. App. 520, at 4, 443 S.W.3d 551, 554. We use the same test to determine whether an employee is performing employment services as we do when determining whether an employee is acting within the course and scope of employment. *Id.* The test is whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest, directly or indirectly. *Pifer v. Single Source Transp.*, 347 Ark. 851, 857, 69 S.W.3d 1, 4 (2002). When it was clear that the injury occurred outside the time and space boundaries of

9

employment, the critical inquiry is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Id.* Moreover, the issue of whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Jonesboro Care & Rehab Ctr. v. Woods*, 2010 Ark. 482, at 5–6.

We agree with Dorn that he was well within the time and space boundaries of his employment, arriving on time to clock in for a meeting inside the security gate of his employer's campus. There was no dispute that he entered the campus and parked on appellee's parking lot, that employees were supposed to clock in by 8:00 a.m., and that he was required to attend a meeting the same morning to resolve the conflict with Spicer. As Dorn points out, although his employer knew of the trouble between Dorn and Spicer and knew that they would arrive by 8:00 in the morning, no member of the supervisory staff had arrived for work when the attack took place—thus creating a possibly dangerous situation without anyone present to protect Dorn when he and Spicer arrived to clock in. We reverse the Commission's finding that Dorn failed to prove a causal connection between his employment and the assault of May 5, 2015, and failed to prove that he was performing employment services at the time of this incident.

### III. *Conclusion*

We reverse the Commission's denial of Dorn's claim that he sustained compensable injuries in the May 5 workplace assault. We do not address Dorn's entitlement to temporary total-disability benefits because the Commission, in denying the compensability of the entire

claim, made no finding on this issue.  We remand to the Commission for a determination of temporary total-disability benefits related to his compensable injuries.

Reversed and remanded.

KLAPPENBACH and HIXSON, JJ., agree.

*Daniel A. Webb*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Jarrod S. Parrish*, for appellee.